676 A.2d 65

Leon C. FEARNOW

v.

THE CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF MARYLAND, et al.

No. 70, Sept. Term, 1995.

Court of Appeals of Maryland.

May 9, 1996.

John J. Hirsh, Pasadena, (Patrick A. O'Doherty, Amy J. Muffolett, Baltimore), on brief, for Petitioner.

James P. Garland, Anthony W. Kraus, (Miles & Stockbridge, on brief), Baltimore, for Respondent.

Argued Before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Associate Judge of the Court of Appeals (retired), Specially Assigned.

KARWACKI, Judge.

The Maryland Wiretapping and Electronic Surveillance Act (hereinafter "the Wiretap Act"), Maryland Code (1974, 1995 Repl.Vol., 1995 Cum.Supp.), § 10–401 *et seq.* of the Courts & Judicial Proceedings Article, protects persons in Maryland from surreptitious eavesdropping, wiretapping, and electronic surveillance by outlawing unauthorized non-consensual interception of wire, private oral, and electronic communications. The Wiretap Act also directs when and by whom such non-consensual interceptions may be authorized and the exact manner in which authorization may be given; it further provides for criminal penalties and civil remedies for violations of the statute.

In the case before us, Leon C. Fearnow, the petitioner and cross-respondent, sued Donald K. Wood, respondent and cross-petitioner, and The Chesapeake & Potomac Telephone Company of Maryland (hereinafter "C & P"), respondent, among others, in the Circuit Court for Washington County, charging that they violated the Wiretap Act by assisting in the illegal interception of his conversations over his workplace telephone. After summary judgment for C & P and judgment

on a jury verdict in favor of Wood, Fearnow appealed to the Court of Special Appeals. That court upheld the summary judgment but reversed the judgment for Wood on a single issue and remanded the case for a new trial. Both Fearnow and Wood sought review by this Court, and we granted certiorari to examine and interpret certain provisions of the Wiretap Act, as well as to reiterate our long-standing rules on the proper preservation of issues for appeal. We shall reverse the specific holding of the Court of Special Appeals on which that court based its reversal and remand; petitioner and cross-respondent Fearnow is not entitled to a new trial. We affirm or decline to reach all other holdings by the Court of Special Appeals.

## I.

In the fall of 1983, Leon C. Fearnow was a police officer with the Hagerstown Police Department. The Chief of the department, Clinton Mowen, ordered[1] Detectives Ryder, Kauffman and Dunahugh of the department to place a wiretap on Fearnow's assigned telephone at police headquarters, with neither a court order nor a justification which would allow wiretapping without a court order under the Wiretap Act.

Ryder and Kauffman were unable to identify the binding posts associated with Fearnow's extension.[2] They decided to ask for assistance from Donald K. Wood, who at that time was employed by C & P as a construction supervisor. Wood had previously worked with the police department as a member of

---

1. At the trial of this case, witness Mowen denied under oath that he had ordered or even discussed the wiretapping of Fearnow's phone. Mowen had been criminally charged with misconduct in office as a result of an investigation into the alleged wiretap, however, and had entered an *Alford* plea. Moreover, both plaintiff and defense witnesses testified to Mowen's involvement. At any rate, the existence of a wiretap on Fearnow's telephone line, regardless of who ordered it, is not in dispute.

2. Binding posts are metal terminals located on the main terminal board of a telephone system, from which telephone wires are run to an extension location to activate the telephone jacks there.

C & P's Community Service Committee, establishing the procedures through which public agencies could obtain technical assistance from the telephone company in emergencies. Wood also apparently had a friendly relationship with Chief Mowen, as both were active in Hagerstown community affairs and civic clubs.

The parties dispute the details of what happened next. Although Wood clearly did go to the police station and provide assistance, where and when the police officers approached him and asked for his assistance is unclear, as is the extent of his participation in the wiretapping of Fearnow's telephone.

According to Wood, Ryder called him at home in the evening, after work hours, and asked him to come to police headquarters to help with a "problem" not further identified. Wood arrived an hour later, with no tools and no idea of what he was being asked to do, and was admitted to a locked police headquarters by Ryder. Mowen joined them, and both officers told Wood they wanted him to identify the binding posts associated with a certain extension number, but did not tell him whose extension it was or why he was identifying it. After identifying the binding posts, Wood testified, he saw Ryder produce a tape recorder, attach it to the posts Wood had identified, and activate it. Wood left the building immediately thereafter, and heard nothing further about the incident until the State Prosecutor's Office began its investigation of Chief Mowen approximately three years later.

Ryder, on the other hand, testified that he telephoned Wood at Wood's office and visited him at his office to request his assistance. He testified at one point that he had informed Wood both that he wanted Wood to assist in a wiretap, and that it was of Fearnow's telephone; however, he later testified to the contrary that he was not sure whether he had told Wood about the wiretap or that it was for Fearnow's telephone. Ryder also gave conflicting testimony at a deposition, which was read at trial, as to the extent of Wood's assistance. He testified at the deposition that Wood had attached the wires to the terminal and made the actual hook-up of the

recorder to the telephone wires, but then on cross-examination at trial stated he was not sure of that fact:

"Q. Well, who hooked the wires up?

A. We were both looking at the diagram and what have you. I can't say. I'm not going to blame it on him and say he did it or I'm not going to say I did it because I don't know. We were both there together."

The wiretap remained on Fearnow's telephone for at least a period of several months, although the parties dispute exactly how long and the testimony at trial was not conclusive.

Following the incident at police headquarters, Wood did not inform anyone at the telephone company of his assistance to the police or of the attachment of a recording device, despite his acknowledged familiarity with a C & P policy which required employees to refer any requests for assistance with telephone interceptions to the C & P Security Department.[3] Wood explained that he believed the policy applied only when a recording or interception device was placed on telephone company equipment or unless he *knew* something illegal was occurring.

The original complaint by Fearnow against Wood and against C & P as Wood's employer[4] was filed in October 1987;

---

**3.** The policy was contained in a booklet on the privacy of communications entitled, "A Personal Responsibility," and says:

"An employee may, however, at some time be approached by someone who is not an authorized employee desiring access to our equipment or to information about communications or wishing to hear, record or otherwise intercept, or learn about a communication. Under no circumstances should you undertake to comply with any such request. This rule applies even if the request comes from someone claiming to exercise authority, such as a police officer or other government representative. You, as an individual, should not take the responsibility of complying with that request. Any such request must be referred immediately to the Security Staff to obtain a decision, with the advice of the company's Legal Department, as to what action shall be taken."

**4.** There were several other defendants at the outset of this case, including Chief Mowen, Detective Ryder, and others. Fearnow's claims against these defendants were either dismissed or settled before trial.

after a series of dismissals and amendments, the only remaining count at the time of trial was based on a charge that Wood had violated the Wiretap Act and that C & P was liable for Wood's actions by virtue of *respondeat superior*. The Wiretap Act outlaws the willful interception of wire, oral, and electronic communications, and provides for some narrow exceptions to the general prohibition; § 10–410(a), under which Fearnow brings this suit, provides any person whose communications have been willfully intercepted with a civil cause of action against the person or persons illegally intercepting.[5]

---

5. Section 10–401(1) of the Courts & Judicial Proceedings Article defines the terms of the Wiretap Act, including "wire communication ":

"(1)(i) 'Wire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of a connection in a switching station) furnished or operated by any person licensed to engage in providing or operating such facilities for the transmission of communications."

The current version of § 10–402 of the Wiretap Act provides in relevant part:

" **§ 10–402. Interception of communications generally; divulging contents of communications; violations of subtitle.**

(a) *Unlawful acts.*—Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . .

(c) *Lawful acts.*—

. . .

(ii) 1. It is lawful under this subtitle for a provider of wire or electronic communication service, its officers, employees, and agents, landlords, custodians or other persons to provide information, facilities, or technical assistance to persons authorized by federal or State law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, if the provider, its officers, employees, or agents, landlord, custodian, or other specified person has been provided with a court order signed by the authorizing judge directing the provision of information, facilities, or technical assistance."

Fearnow presses his case under the 1988 version of § 10–402, quoted *infra,* but the changes in the statute since 1988 are not relevant to the case before us.

Finally, § 10–410(a) of the Wiretap Act provides for civil liability for illegal interceptions:

" **§ 10–410. Civil liability; defense to civil or criminal action.**

Wood and C & P moved for summary judgment, arguing that Wood did not violate the Wiretap Act. C & P also argued in the alternative that even if Wood was found to have acted in violation of the Wiretap Act, such action would necessarily be outside his scope of employment and C & P would still not be liable. The hearing court found the assertions in the pleadings and supporting documents insufficient to support a finding that Wood willfully intercepted Fearnow's telephone communications and thus granted summary judgment for both defendants, never reaching C & P's alternative argument concerning scope of employment. Fearnow appealed from those judgments.

In an unreported opinion, (*Fearnow I* ), the Court of Special Appeals held that the asserted facts concerning Wood's willfulness *were* sufficiently in dispute to generate a jury issue, especially since determining a party's intentions is in general within the purview of a factfinder; therefore, the court reversed the circuit court's summary judgment for both defendants and remanded the case for trial. On remand, C & P again sought and won summary judgment, this time on the basis that Wood, even if he acted in violation of the Wiretap Act, was not acting within the scope of employment as a matter of law. Meanwhile, the case against Wood went to trial and the jury returned a verdict in favor of Wood.

Fearnow appealed both the summary judgment in favor of C & P and the judgment on the jury verdict, contending that the trial court made several errors in its rulings and in its conduct of the pre-trial discovery and trial. In *Fearnow v. Chesapeake & Potomac Telephone Co. of Maryland, et al.*, 104

---

(a) *Civil liability.*—Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this subtitle shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use the communications, and be entitled to recover from any person:
(1) Actual damages ...
(2) Punitive damages; and
(3) A reasonable attorney's fee and other litigation costs reasonably incurred."

Md.App. 1, 655 A.2d 1, (1995), (*Fearnow II* ), our intermediate appellate court reversed the judgment for Wood and remanded the case for another trial on the basis of a single faulty jury instruction. The court carefully reviewed and upheld the rest of the trial court's actions of which Fearnow had complained and, in particular, affirmed the circuit court's grant of summary judgment in favor of C & P.

Although Fearnow won a new trial against Wood, he still petitioned for certiorari on the other rulings of the Court of Special Appeals in *Fearnow II.* Wood cross-petitioned for certiorari, challenging the reversal and the remand. We granted both petitions.

## II.

We first address Wood's cross-appeal of the intermediate appellate court's ruling that Fearnow is entitled to a new trial based on a faulty jury instruction. Thoroughness requires us to quote extensively from the record, the briefs of the parties, and the Court of Special Appeals opinion in *Fearnow II.*

The trial court instructed the jury that Fearnow was required to prove that he had a reasonable expectation of privacy in his telephone calls at his workplace, and that Wood knew Fearnow had such a right to privacy:

"The Maryland legislature enacted [the Wiretap Act] to prevent the unauthorized interception of conversations where at least one of the parties has a reasonable expectation of privacy.

I might stop here and say that the attorneys will argue to you their differing views on what is meant by this law with respect to reasonable expectation of privacy.

*In proving a violation of statute, the plaintiff must prove that any conversations that were intercepted were ones in which he had a reasonable expectation of privacy.* Let me explain. If the plaintiff, Leon Fearnow, is on the phone and Miss X or Mr. X or Mr. Jones, or anyone calls him, you must find that at least one of the parties had a reasonable expectation of privacy. . . .

*In proving a violation of the statute, the defendant [sic] must prove that any conversations that were intercepted were ones in which he had an expectation of privacy.* This is a factual determination which must be made by you, the jury.

If you find that the defendant, Donald Wood, knew that Leon Fearnow and all other parties to a telephone conversation had a reasonable right of privacy in their conversation over a telephone, and you further find that, with that knowledge, he, that is, Donald Wood, participated in the interception of a telephone communication of the plaintiff, Leon Fearnow, with others, that is a factor that you may consider in determining whether the defendant, that is, Donald Wood, acted willfully." (Emphasis added.)

Fearnow objected to this instruction on two grounds: first, that Fearnow's reasonable expectation of privacy was already established by the Court of Special Appeals in *Fearnow I,* and second, that proving a reasonable expectation of privacy in each conversation was unduly burdensome and impossible inasmuch as Fearnow believed the tapes of those conversations were inadmissible. Fearnow's attorney stated:

"In addition, we except to the giving of Defendant's Instruction No. 7. We believe that reasonable privacy is not an issue of fact before this jury. *The Court of Special Appeals, in the Fearnow decision, has already stated that the plaintiff has a reasonable expectation of privacy and we believe that this Court is bound by that determination and that this is not an issue of fact for the jury.* In addition, we believe that the statute does not require that the plaintiff prove that each conversation intercepted was one in which he had a reasonable expectation of privacy. We don't believe we have that burden of proof under that statute and that we are entitled to an inference that when the recorder was hooked up on plaintiff's phone, that that constitutes the interception, and we do not have to prove each specific conversation, that there was a reasonable expectation of privacy on each conversation. We believe that the instruction that was given was confusing because it implies that we

have to prove each specific conversation. As we pointed out in chambers, the tapes are under seal. They may have very well been destroyed and the plaintiff has no way of ascertaining the subject matter of each conversation on that tape. Oh, and then we have to get the consent of all the other parties to the conversations on the tape because they have an expectation of privacy. And as also pointed out in chambers, Judge Thayer has ordered the tapes sealed." (Emphasis added.)

The trial judge refused to amend his charge after examining the *Fearnow I* opinion.

At the intermediate appellate court, Fearnow contended error in the judge's reasonable expectation of privacy instruction on several grounds not mentioned in his oral objection, including the grounds on the basis of which the court reversed the judgment of the trial court and remanded the case. Fearnow's appellant's brief in the Court of Special Appeals quoted the jury instruction on reasonable expectation of privacy and then stated:

"This instruction erred on several grounds. Under § 10–401(1)(i) of Maryland's Wiretap Act, Fearnow's communications over his illegally intercepted phone line were wire communications *not requiring proof of a reasonable expectation of privacy.* All parties to a telephone conversation have a reasonable expectation of privacy. Furthermore, the defendant elicited absolutely no evidence to support this instruction, which coupled with the clear and convincing evidence[6] instruction amounted to a directed verdict for the defendant." (Emphasis and footnote added.)

Wood argued the threshold issue of preservation to the Court of Special Appeals, noting that Fearnow did not state at

---

**6.** The defendant at trial argued for and the trial judge accepted a "clear and convincing evidence" standard of proof for violations of the Wiretap Act. Fearnow did not petition for certiorari on the question of standard of proof, and so we do not reach the issue, but we note that our declining to reach the issue does not in any way imply our agreement that the clear and convincing evidence standard is appropriate in civil cases brought under the Wiretap Act.

trial the grounds he pressed on appeal, as required by Maryland Rule 2–520. The intermediate court rejected Wood's preservation argument, holding:

"It is clear that appellant objected to this jury instruction based, in part, on the contention that his expectation of privacy in his telephone communications was not an issue for the jury. Indeed, appellant stated specifically 'that reasonable privacy is not an issue of fact before this jury.' We believe that this was sufficient, pursuant to Md. Rule 2–520(e), to preserve that issue for our review. As it is upon this basis that we hold the instruction to be reversible error, we need not discuss appellant's additional claims in this regard."

*Fearnow II,* 104 Md.App. at 31, 655 A.2d at 16.

■■■ The court went on to discuss extensively the law of privacy and its relationship to the Wiretap Act, agreeing with Fearnow's specific argument *found only in his appellate brief* that telephone communications were "wire communications" and not "oral communications" under the Wiretap Act and case law, and that privacy expectations were "irrelevant to statutory liability for the alleged interception of *wire* communications...." (Emphasis added.) The intermediate appellate court recognized that "oral communication" under § 10–401 of the Wiretap Act means "any conversation or words spoken to or by any person in private conversation." Thus, when an oral communication is intercepted, determining whether a violation of the Wiretap Act occurred hinges on a jury determination that at least one of the parties had a reasonable expectation of privacy. The definition of wire communication, on the other hand, makes no reference whatsoever to privacy and thus privacy is not relevant to determining a violation of the Wiretap Act when *wire* communication has been intercepted. *See Benford v. American Broadcasting Co., Inc.,* 649 F.Supp. 9, 11 (D.Md.1986) (the Wiretap Act parallels the federal wiretap act in its requirement that oral communications require factual finding of reasonable expectation of privacy); *Briggs v. American Air Filter Co., Inc.,* 630 F.2d 414, 417 n. 4 (5th Cir.1980); *PBA Local No. 38 v.*

*Woodbridge Police Dep't,* 832 F.Supp. 808, 819 (D.N.J.1993) (comparing the New Jersey wiretap act to the federal act and noting that telephone conversations, as wire rather than oral communications, are protected generally regardless of the speakers' expectation of privacy).

The intermediate appellate court then held that the error was not harmless because the jury was prevented from properly considering the issue of Wood's willfulness:

> "Therefore, had the jury been properly instructed, i.e., 'because plaintiff's telephone communications are "wire communications," the plaintiff's reasonable expectation of privacy is irrelevant to your determination of whether Wood acted willfully,' it would have been free to decide whether Wood acted willfully when he allegedly intercepted appellant's telephone conversations, regardless of appellant's reasonable expectation of privacy and Wood's knowledge of that expectation."

*Fearnow II,* 104 Md.App. at 36, 655 A.2d at 18. In other words, the court held that the question of a reasonable expectation of privacy was not an issue for the jury *not* because, as Fearnow had argued at trial, it was already settled as the law of the case that Fearnow had such an expectation, but to the contrary, because it was not a relevant issue for anyone, judge or jury, in the context of this particular alleged violation of the statute. Based on this instructional error by the trial judge, the court remanded the case for a new trial.

Without question, notwithstanding the vague rationale given in the previous paragraphs of its opinion, the court *actually* based the holding of error on the distinction between wire and oral communications in the statute, which was the first ground for objection in Fearnow's *brief.* Fearnow made no such distinction at trial in his objection to the judge's instruction and in fact never mentioned § 10–401 of the Wiretap Act. Consequently, we disagree with the Court of Special Appeals that Fearnow sufficiently preserved the grounds on which the court based its reversal and remand. Md. Rule 2–520(e) provides:

"No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection."

We and our intermediate appellate court have consistently interpreted this rule and its precursor, former Md. Rule 554(d), as requiring parties to be precise in stating objections to jury instructions at trial, for the plain reason that the trial court has no opportunity to correct or amplify the instructions for the benefit of the jury if the judge is not informed of the exact nature and grounds of the objection. *Sergeant Co. v. Pickett*, 283 Md. 284, 288–89, 388 A.2d 543, 546 (1978); *Rhone v. Fisher*, 224 Md. 223, 232, 167 A.2d 773, 779 (1961); *Maszczenski v. Myers*, 212 Md. 346, 356, 129 A.2d 109, 114 (1957); *Barone v. Winebrenner*, 189 Md. 142, 145, 55 A.2d 505, 506 (1947); *Black v. Leatherwood Motor Coach Corp.*, 92 Md.App. 27, 33–34, 606 A.2d 295, 298, *cert. denied*, 327 Md. 626, 612 A.2d 257 (1992); *Edmonds v. Murphy*, 83 Md.App. 133, 178, 573 A.2d 853, 875 (1990), *aff'd*, 325 Md. 342, 601 A.2d 102 (1992); *Ghassemieh v. Schafer*, 52 Md.App. 31, 39, 447 A.2d 84, 88 (1982). *See also* Lynch & Bourne, *Modern Maryland Civil Procedure*, § 9.7(b). If the party objecting does not clearly state, at the time of the objectionable instruction, the nature of the objection and the reasoning and law on which the objection is grounded, an appellate court can hardly find error, at that same party's request, in a trial judge's failure to correct a mistake in the charge.

In the instant case, Fearnow certainly did object to sending the issue of determining privacy expectations to the jury, but not because it was *irrelevant* to the consideration of Wood's willfulness; to the contrary, Fearnow stated that the Court of Special Appeals had already made the determination that he had a reasonable expectation of privacy, and that the jury was "bound by" that determination. Fearnow himself submitted a request for jury instruction which cited *Fearnow I* and read:

### *" PLAINTIFF'S INSTRUCTION NO. 12*

You are instructed as a matter of law that the plaintiff, Leon Fearnow, had a reasonable expectation of privacy on his office telephone and certainly any other party to a conversation with the plaintiff would have an expectation of privacy."

Fearnow's oral objection, combined with this written request which was submitted to the trial judge, clearly were not sufficient to alert the trial judge to any actual errors in his instructions. To a significant extent, Fearnow's objections and stated grounds even confirmed the judge's erroneous understanding that reasonable expectation of privacy was a consideration under the statute.

*Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 606 A.2d 295, *cert. denied,* 327 Md. 626, 612 A.2d 257 (1992), is closely analogous to the case *sub judice.* Plaintiffs suing for injuries caused by a bus accident won a jury verdict, but did not receive punitive damages. On appeal, they claimed error in the jury instructions on punitive damages. The Court of Special Appeals examined the record of plaintiffs' objections at trial and found that they had indeed excepted to the instructions as "unnecessary" and "improper and confusing;" yet, in their brief to the Court of Special Appeals, plaintiffs/appellants listed four very specific grounds for objection, two of which were not raised at trial. Those two grounds included a failure of the judge to define a term used and a misleading implication by the judge that both parties had requested the instruction when in fact only one party had. The court held that the grounds raised in the brief but not at trial were not preserved for appellate review under Md. Rule 2–520(e), because the purpose of the rule was to allow the trial judge the opportunity to correct, supplement, or otherwise "amplify" his charge to cover the law of the case. *Id.* at 33–34, 606 A.2d at 298. Had the plaintiffs in *Black* raised their specific objections to the trial judge, the trial court might have been able to correct any misimpressions he may have given the jury, or define any confusing terms he used; similarly, the trial judge

in the instant case could have reconsidered his statement of the law as it applied to "wire communications" had Fearnow raised the proper grounds for objection at trial rather than later in his appellate brief.

In *Edmonds v. Murphy,* 83 Md.App. 133, 573 A.2d 853 (1990), *aff'd,* 325 Md. 342, 601 A.2d 102 (1992), defendants in an automobile negligence suit appealed from a judgment on a jury verdict for the plaintiffs, contending that the trial court erred in failing to instruct the jury on a specific legal doctrine relevant to the case, and on the plaintiffs' proper burden of proof. The plaintiffs/appellees responded that the defendants/appellants had not properly preserved these issues because when they objected at trial they referred to the instructions by their numbers and gave only sketchy information to the judge, and did not state the grounds for objection distinctly. The court noted that, even after the trial judge attempted to clarify the objection, it was "far from certain that the trial judge actually comprehended the point being asserted;" further, the court held, that since the appellants' counsel could not make clear exactly what he was concerned with, he had failed to state the grounds for objection "distinctly" under the Rule. *Id.* at 177–78, 573 A.2d at 875. The court further pointed out:

> "The purpose of the relevant Maryland Rule is to allow the trial court to correct any inadvertent error or omission in the oral charge as well as to limit the review on appeal to those errors which are brought to the trial court's attention. In this manner, the trial judge is afforded an opportunity to amend or supplement his charge if he deems an amendment necessary. We do not believe that the trial judge was afforded such an opportunity and thus the purposes of Rule 2–520 were not adequately served by the exception taken here. We hold, then, that this issue is not preserved for our review." (Citations and footnotes omitted.)

*Id.* at 178, 573 A.2d at 875. In the instant case, as in *Edmonds,* the trial judge was simply not afforded a fair opportunity by Fearnow's objections to correct any error of law and thus avoid a reversal and another trial.

In *Sergeant Co. v. Pickett*, 283 Md. 284, 388 A.2d 543 (1978), this Court found some flexibility in the preservation rule. We held that an objection entered to a trial court's failure to grant a requested jury instruction was adequate to preserve appellate review if the objection was in "substantial compliance" with former Md. Rule 554 (precursor to Rule 2–520). *Id.* at 289, 388 A.2d at 547. The Court noted that no special form of objection was required, and "no ground need even be stated 'where the record makes clear that all parties and the court understood the reason for the objection.'" (Citations omitted.) *Id.* at 288–89, 388 A.2d at 546. We then went on, however, to recognize explicitly that

> "further exposition by appellants' counsel of the 'ground' for the principle of law reflected by the instruction would have been both fruitless and unnecessary insofar as the rule was concerned. Once the trial court had signified that it comprehended the *precise* point being asserted, but nevertheless rejected it out-of-hand, the requirements of the rule had been met." (Emphasis added.)

*Id.* at 289–90, 388 A.2d at 547.

In the instant case, the reasons Fearnow gave orally at trial for his objection to the instruction were starkly different from the reasons he gave in his appellant's brief to the Court of Special Appeals. If we assume *arguendo* that Fearnow meant to state the same grounds at trial as he asserted in his brief, then we have no evidence to suggest that the trial court or the defense attorneys "understood the reason for the objection." They may have understood that Fearnow did not believe privacy expectations should have gone to the jury, but that does not fully satisfy the requirement. The question is whether they understood *why* Fearnow believed the issue was not one for the jury: because privacy was irrelevant to a determination of whether an illegal interception of a wire communication under the Wiretap Act had occurred. Further exposition on the law would not have been "fruitless and unnecessary," as it was in *Sergeant*, because clearly the trial judge here did *not* understand privacy expectations to be irrelevant to the violation of the statute, and Fearnow's actual objection and prayer

for instructions supported rather the opposite position that privacy *was* relevant as a matter of law. The trial judge could not have "comprehended the precise point being asserted" under these circumstances, only the general point that Fearnow did not believe the jury was to determine the issue. Therefore, Fearnow's oral objection was not in "substantial compliance" with Rule 2–520 and does not meet the test enunciated in *Sergeant.*

In *Fearnow II,* the Court of Special Appeals correctly applied Rule 2–520 to another jury instruction question raised by Fearnow on appeal, but this time found that Fearnow had not objected to the instruction at trial with sufficient specificity, and thus had not preserved the issue for appellate review. The judge gave an instruction that under Maryland law police officers were presumed to act lawfully in the performance of their duties. Fearnow in his brief to the Court of Special Appeals argued that the presumption was statutorily nullified by § 10–402(c)(1)(ii) of the Wiretap Act, which he claimed imposed a duty of inquiry on Wood to ask for proof of a court order before providing technical assistance with an interception to police officers. In the trial court, however, at the time of the instruction, Fearnow merely stated that the presumption was confusing and not applicable, and never mentioned the statutory provision which he later asserted precluded any such presumption. Our intermediate appellate court held that because Fearnow had failed to refer to § 10–402(c)(1)(ii) at any time during his oral objection, he did not object with specificity under Rule 2–520 and therefore could not properly assert the issue before the appellate court. *Fearnow II,* 104 Md.App. at 39–40, 655 A.2d at 20.

We affirm their holding in that instance, and believe the exact principle applies to the reasonable expectation of privacy instruction. Fearnow asserted in his appellate brief that the definition of "wire communication" under § 10–401 did not require proof of privacy expectations, yet never mentioned the statutory basis for his objection nor the distinction between wire and oral communication to the trial judge. Doing so could very well have prompted the judge to examine the law

once more. It appears to us that Fearnow did not cite the definitional section of the Wiretap Act to the judge because that was not in fact one of the grounds for his objection *at trial;* in any case, if we apply the same sensible reasoning our intermediate appellate court applied to the other jury instruction, Fearnow cannot properly assert the objection before an appellate court when he did not refer to the statutory provision on which he later purported to have based his objection.

We hold that Fearnow did not preserve for appellate review the issue of the trial court's faulty jury instruction on reasonable expectation of privacy. As we find that Fearnow did not preserve the grounds for objection to the reasonable expectation of privacy instruction, we shall not review the correctness of the intermediate appellate court's substantive analysis of the reasonable expectation of privacy issue.

### III.

Although we have reversed the intermediate appellate court's single ruling which would have resulted in remand and re-trial, Fearnow raised in the Court of Special Appeals and raises before us several other questions concerning the conduct of the Wood trial which, if we held for Fearnow, would mean the case against Wood would have to be re-tried. After close examination, we conclude that Fearnow's arguments on these issues are either not preserved or without merit.

### (a)

Fearnow claims the trial judge erred when he refused to instruct the jury that *endeavoring* to intercept, as well as actual interception of, a wire communication creates a cause of action under the Wiretap Act's civil liability provisions. Wood responds that the question has not been properly raised before this Court, as Fearnow first raised it before the Court of Special Appeals in his *reply* brief, not his appellant's brief, and that court therefore granted Wood's motion to strike the argument. *Fearnow II,* 104 Md.App. at 15 n. 1, 655 A.2d at 7–8 n. 1, citing *Federal Land Bank, Inc. v. Esham,* 43 Md.App. 446, 459, 406 A.2d 928 (1979).

■  Fearnow did not seek certiorari review of the interme-
diate appellate court's decision to strike his argument; he
merely reiterated to us his substantive claim that "endeavor-
ing to intercept" can also be the basis for civil liability. We
will not consider the merits of his argument, however, because
we agree with respondents that the issue is not properly
before us. A reply brief in the Court of Special Appeals
should ordinarily be confined to responding to issues raised in
the appellee's brief. *Ritchie v. Donnelly*, 324 Md. 344, 375,
597 A.2d 432, 447 (1991). Although the Court of Special
Appeals, in its discretion, could have considered Fearnow's
arguments raised for the first time in the reply brief, we find
no abuse of discretion in its refusal to do so. *Id.* An argument
struck by the Court of Special Appeals and thus never actually
argued or considered is not adequately preserved.

(b)

■  Second, Fearnow assigns error to the Court of Special
Appeals' "conclusion," as he terms it, that § 10–402(c)(1)(ii) of
the Wiretap Act does not impose on communications common
carrier employees a duty of inquiry into the lawfulness of a
wire interception.

Before the intermediate appellate court, Fearnow raised the
question of a duty of inquiry as a supporting but subsidiary
point in two challenges to the judge's jury instructions. He
first objected to the trial judge's failure to give a requested
instruction, but the Court of Special Appeals upheld the trial
judge's denial of the request. It is somewhat unclear whether
the court based its rejection of Fearnow's argument in support
of the requested instruction on procedural or substantive
grounds; in either case, Fearnow did not seek certiorari
review of the intermediate appellate court's ruling on this
instruction and so its subsidiary question of a duty of inquiry
is not before us.

Fearnow also claimed the statutory duty of inquiry negated
the legal presumption contained in an instruction the trial
judge did give, and objected to the instruction. The Court of

Special Appeals held there, however, that Fearnow did not interpose a sufficient objection, and consequently refused to answer the substantive appeal on the grounds that the issue was not preserved. The court did "discuss" the merits of the duty of inquiry theory, for the guidance of the trial court on remand. It is this "guidance" that Fearnow appears to be challenging as erroneous in his brief to our Court.

Since we have reversed the holding of the Court of Special Appeals, however, the case will not be returning to the trial court on remand and guidance to the trial court is not necessary. Therefore we will not review the substantive merits of his challenge, for our comments would only be *dicta*.

(c)

The trial court refused to give a number of jury instructions requested by Fearnow. The Court of Special Appeals agreed with the trial court's actions in regard to each requested jury instruction. Fearnow has now asked us to reverse the intermediate appellate court's rulings on each jury instruction. We examine each ruling under the principles announced in *Sergeant Co. v. Pickett*, 285 Md. 186, 193–94, 401 A.2d 651, 655 (1979) to determine whether the trial judge was correct in denying the requested instructions: first, whether the requested instruction is a correct statement of the law, second, whether the law is applicable to the facts in the case, and third, whether the trial judge fairly covered the same law by other instructions actually given. If any one part of the test is not met, we will affirm the trial court's denial of the request for instruction.

(i)

Fearnow requested that the judge instruct the jury that Wood was presumed to know the law of wiretapping, as follows:

## " *PLAINTIFF'S INSTRUCTION NO. 16*

You are instructed as a general rule that all persons are presumed to know the law and a person is also presumed to

know or is chargeable with knowledge of matters which he has the opportunity of knowing and should know. Thus, in the absence of evidence to the contrary, a person is presumed to know the contents of a statutory enactment. What that means here is that the defendant, Donald Wood, was presumed to know the prohibitions against the interception of conversations without a court order.

### PLAINTIFF'S INSTRUCTION NO. 17

A person is presumed to know the law regarding the wiretap statute. Ignorance of this law will not relieve him from the legal consequences of acts contributing to the violation of this statute."

Fearnow argued to the Court of Special Appeals that because Wood was a telecommunications specialist specially assigned to the police department, working for a company whose business is wire communications, Wood and other C & P employees "should be presumed to have the requisite knowledge and expertise in the State and Federal Wiretap Statutes."

Fearnow's requested instructions fail the second step of the *Sergeant* test. Wood had already admitted on the stand that he was familiar with the Wiretap Act. Therefore, the instructions to the jury regarding the common-law presumption that a person is presumed to know the law were unnecessary and inapplicable to the facts in the case. The trial court correctly refused to give these two instructions.

### (ii)

■ Fearnow asked the trial court to instruct the jury that "[o]wnership of the telephone equipment has no bearing on whether or not consent exists under Maryland's Wiretap Act for a lawful interception." The trial court refused to do so and the Court of Special Appeals properly affirmed the refusal, because the law, even if correctly stated,[7] does not apply to the

---

7. The defendants point out in their brief to our Court that the question presented to the Court of Special Appeals did not accurately reflect the

facts in the case and thus fails the second step of the *Sergeant* test.

Wood had admitted that he was made aware of laws and policy regarding wiretapping, through a booklet published by the telephone company for all its employees; however, he also testified that he thought the policies discussed in the booklet applied only to equipment owned by the telephone company, and that providing technical assistance to the owner of certain telephone equipment was not in violation of the duties outlined in the booklet. Therefore, as the Court of Special Appeals held, Wood did not introduce evidence that the Hagerstown Police Department owned the equipment in order to show that the department consented to the wiretap; rather, he introduced the evidence as part of his defense that he did not recklessly disregard a known legal duty and was not acting willfully. Fearnow's instruction would have thoroughly confused the jury because it was not relevant to any argument of either party.

(iii)

The trial judge refused to give an instruction requested by Fearnow which stated:

*" PLAINTIFF'S INSTRUCTION NO. 15*

You have heard reference to and testimony regarding § 10–402(c)(2) of the Courts and Judicial Proceedings Article, commonly referred to as the consensual monitoring of conversation in certain classes of crimes. I instruct you as a matter of law that § 10–402(c)(2) has no applicability to this case because there is no legally sufficient evidence to support a contention that Leon Fearnow's phone was con-

---

actual instruction Fearnow requested at the trial level, which included a statement that "without a court order, all parties to the conversation must give their consent." This, as the defendants point out, is a misstatement of the law, as single-party consent is possible in some police-investigation contexts without a court order; therefore, the actual instruction requested fails the first step of the *Sergeant* test as well.

sensually monitored. You must disregard these references and testimony in your deliberations."

The intermediate appellate court did not reach this issue, but we shall. The instruction was wrong as a matter of law because § 10–402(c)(2) was not only applicable but critical to Wood's defense that he was not recklessly disregarding a known legal duty. Wood testified that he knew there were situations in which police could monitor telephone calls without a court order, and he further testified that for all he knew, the telephone lines he was identifying for the officers might have belonged to those officers themselves. As Wood argued in his brief to this Court, "[t]he jury was entitled to consider his testimony in light of the language of the Act, which did provide a basis for those beliefs and for his declared state of mind." The trial court did not err in refusing to give this instruction.

### (iv)

■ Fearnow also requested a jury instruction which stated, "Maryland's wiretap act required a court order prior to the interception of Fearnow's phone." The intermediate appellate court upheld the trial judge's refusal to give the instruction, as it was wrong as a matter of law, and we agree. The instruction, first of all, presumes that the jury would not and could not consider the possibility that *Wood believed* that wiretapping Fearnow's telephone might have been lawful even without a court order. We have already stated above that the jury was entitled to consider that possibility, as the question of Wood's willfulness hinged on what he believed was happening that evening and whether he was consciously disregarding a known legal duty. The instruction fails the first step of the *Sergeant* test.

### IV.

Additionally, Fearnow made a number of arguments to us concerning discovery issues, punitive damages and reputational damages under the Wiretap Act, and of course he challenged the summary judgment ruling in favor of defendant C

& P. The Court of Special Appeals reached many of these issues but rejected all of Fearnow's arguments. Meanwhile, Wood asserted in his cross-petition to this Court that he was entitled to judgment as a matter of law because Fearnow failed to prove that any of his conversations were actually intercepted, which was a central element of the claim under § 10–410 of the Wiretap Act. We need not reach any of these additional arguments because we hold that the jury verdict in Wood's favor is unassailable and that the trial court's judgment on that verdict should be affirmed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AS TO RESPONDENT AND CROSS–PETITIONER DONALD K. WOOD REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY; JUDGMENT IN FAVOR OF THE CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF MARYLAND, RESPONDENT, AND CROSS–PETITIONER AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER AND CROSS–RESPONDENT.*