Dear Chief Moose:
You have asked for our opinion concerning the application of the State Wiretap Act to the installation of video and audio recording equipment in police cars in Montgomery County. In particular, you ask whether an officer who "inadvertently" records the audio portion of a videotaped conversation with an individual without that individual's consent could be charged with a violation of the State Wiretap Act.
In our opinion, an officer who follows the Police Department policy for recording the audio portion of a videotaped encounter with a citizen would be in compliance with the State Wiretap Act. An officer who inadvertently makes a recording would not violate that Act.
 I Background The Wiretap Act
The Maryland statute that governs wiretapping and electronic surveillance, sometimes referred to as the Wiretap Act, is codified at Annotated Code of Maryland, Courts Judicial Proceedings Article ("CJ"), § 10-401 et seq. The State Wiretap Act was patterned after the federal wiretapping and electronic surveillance law, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90-351, 82 Stat. 212, codified at18 U.S.C. § 2510 et seq. However, the State statute is more stringent than the federal law in several respects. Gilbert, ADiagnosis, Dissection, and Prognosis of Maryland's New Wiretap andElectronic Surveillance Law, 8 U. Balt. L.Rev. 183, 191 (1979).
Except as specifically authorized in the Wiretap Act, a person may not "willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." CJ § 10-402(a)(1). In addition, it is unlawful to willfully use or disclose the contents of a communication obtained in violation of the wiretap law. CJ § 10-402(a)(2)-(3). The Wiretap Act does not address video surveillance alone.[1]
A communication intercepted in violation of the Wiretap Act, as well as any derivative evidence, is to be excluded from evidence in any court proceeding. CJ § 10-405. In addition, a person who intercepts a communication in violation of the Act is subject to civil and criminal penalties. CJ § 10-402(b), § 10-410.[2]
The Wiretap Act qualifies its prohibitions by specifying a number of circumstances in which a person may lawfully intercept a wire, oral, or electronic communication. See CJ § 10-402(c). Of particular relevance to your question are consensual interceptions and a special traffic stop exception.
 Use of Audio Monitoring Equipment in Police Cars
We understand that the Montgomery County Police Department ("the Police Department") is installing video recording equipment in patrol cars. That equipment is also able to record sound and thus potentially may be used to intercept oral communications. The Police Department has developed a policy on when an audio recording will be made in conjunction with a video recording.
The recording equipment consists of a small video camera, two microphones, and a recording device similar to a VCR. The video camera is attached to the ceiling of the car near the rear view mirror and is linked to the recording device in the trunk of the car. One of the microphones is inside the vehicle and is wired to the recording device. The second wireless microphone is clipped to the officer and sends signals to the recording device when it is activated. Audio signals from the two microphones are recorded on separate tracks on the videotape in the recording device. Neither microphone is enhanced to pick up sounds beyond normal earshot.
The video camera normally faces out from the car and thus records activity occurring in front of the vehicle. However, it can be swiveled from side to side and can even be turned completely around to focus on the back seat of the car. Officers can control both the video and audio portions of the recording equipment by switches within the vehicle. In addition, an officer can turn the audio portion of the recording on and off from a remote control on the officer's belt. There is no written notice inside police vehicles concerning video and audio recording, although the video camera attached to the ceiling of the police car is in open view.
The Police Department policy requires officers to turn on the video camera and make a video recording in four circumstances:
 (1) When the officer turns on the overhead lights of the police car, known as a "code 3" situation;
(2) When the officer is in pursuit of someone;
 (3) When the officer stops another vehicle for a traffic violation;
(4) When the officer transports a prisoner in the car.
A microphone may also be turned on in the first three situations to record comments and oral notes of the officer in the car. The microphone is not switched on when a prisoner is transported. Rather, the camera is directed at the prisoner in the back seat and only a video recording is made.
The second wireless microphone is used in certain circumstances when an officer leaves the car. When an officer pulls another vehicle over for a traffic stop, the officer turns on the wireless microphone as the officer approaches the stopped vehicle. The officer informs the occupants of the vehicle that the encounter is being recorded. If the driver or another occupant objects to the recording, the officer informs that person that Maryland law permits the recording.
Aside from the four circumstances listed above, it is within the officer's discretion whether to turn on the video recording equipment. However, the Department policy requires that, before turning on a microphone to record the audio portion of an encounter with a citizen, the officer obtain the consent of persons to be recorded. In fact, the officer is to obtain consent twice: once before the microphone is turned on, and again after the microphone is switched on so that the consent becomes part of the recording.
Although it may be technically possible to activate a microphone without also making an audio recording, under the Police Department's guidelines the microphones are used only in circumstances in which a video recording is also being made. Thus, any sound monitored by the microphones should also be recorded on the videotape.
 II Analysis
We address first whether the intended use of the audio recording equipment in conjunction with video recording under the Police Department's policy is consistent with the Wiretap Act. Second, we consider whether an inadvertent recording made with that equipment would violate the Act's prohibition against the willful interception of oral communications.[3]
 Intentional Audio Recording under the Policy
Under the Police Department's procedures, as we understand them, the audio monitoring and recording equipment ordinarily records only the comments and oral notes of the officers inside the police car. The Police Department's policy permits the equipment to be used to monitor and record communications of other individuals in only two situations: (1) during a traffic stop; and (2) in other instances in the discretion of the officer with the consent of the individuals to be recorded.
It appears that the Police Department's procedures for monitoring and recording the audio portions of police encounters with citizens are designed to meet the criteria for lawful interceptions outlined in the Wiretap Act.
 1. Traffic Stops
In its listing of lawful interceptions, the Wiretap Act explicitly permits the interception of oral communications during a traffic stop under certain conditions. In particular, the statute provides:
 It is lawful under this subtitle for a law enforcement officer in the course of the officer's regular duty to intercept an oral communication, if:
 (i) The law enforcement officer initially detained a vehicle for a traffic violation;
 (ii) The law enforcement officer is a party to the oral communication;
 (iii) The law enforcement officer has been identified as a law enforcement officer to the other parties to the oral communication prior to any interception;
 (iv) The law enforcement officer informs all other parties to the communication of the interception at the beginning of the communication; and
 (v) The oral interception is being made as part of a video tape recording.
CJ § 10-402(c)(4). This provision was added to the statute in 1991. Chapter 140, Laws of Maryland 1991. There is no parallel provision in the federal statute, although an interception in these circumstances would be permissible under the federal statute because it occurs with the consent of one of the parties to the conversation — the officer. See 18 U.S.C. § 2511(2)(c).
An officer who follows the Police Department's policy in using the equipment during a traffic stop should satisfy the criteria set forth in CJ § 10-402(c)(4). Most traffic stops are made by officers in marked cars that clearly identify their occupants as law enforcement officers. Because the conversation is picked up by a microphone attached to the officer, the officer will be a party to the conversation that is monitored and recorded. Under the Police Department policy, the officer is to inform the driver and other occupants of the stopped vehicle of the audio monitoring and recording.[4] Finally, the audio recording is made in conjunction with a video recording of the traffic stop. Thus, all of the criteria for a lawful interception under CJ § 10-402(c)(4) are met.
 2. Consent of all Parties
Under the State Wiretap Act, a person may intercept an oral communication with the consent of all parties to the communication. Specifically, the statute provides that it is lawful:
 For a person to intercept a[n] . . . oral . . . communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception. . . .
CJ § 10-402(c)(3). This exception does not apply if the communication is intercepted for the purpose of committing a crime or a tort. Id. In limited circumstances involving the investigation of certain enumerated crimes,[5] the Act also permits an interception with the consent of only one party — a law enforcement officer or the officer's agent. CJ § 10-402(c)(2).
The general condition that all parties to a communication consent to its interception is more stringent than federal law. Under the federal statute, a communication may be intercepted with the prior consent of just one party to the communication.18 U.S.C. § 2511(2)(c)-(d).
In circumstances other than traffic stops in which an officer elects to use the video and audio recording equipment, the Police Department requires that the officer obtain the consent of the other parties to the conversation before turning on the microphone. The officer must also have that assent repeated on the audio recording. This policy appears well designed to implement and document the statutory exception for interceptions with the consent of all parties to a conversation. Thus, an officer who follows the Police Department's policy concerning the use of the audio equipment will not violate the prohibition against the interception of oral communications in CJ § 10-402(a).
 Inadvertent Interceptions
You asked whether an officer who "inadvertently" records oral statements by an individual without obtaining the individual's consent would violate CJ § 10-402(a). By "inadvertent recording," we assume that you refer to either of the following two situations: The officer intends to make an audio recording authorized by the Police Department's policy, but the microphone picks up statements of an individual, such as a passerby, who has not consented to, or been informed of, the interception. Alternatively, the recording itself is unintentional — i.e., the officer mistakenly turns on the microphone without intending to do so, or an equipment failure activates the microphone without the officer's knowledge.
In those circumstances, an officer would not violate the Wiretap Act because one or more key elements of a violation would be lacking. First, depending on the particular circumstances, the conversation may not constitute an "oral communication" under the State Wiretap Act. In any event, an inadvertent recording would not be a "willful interception."
 1. "Oral Communication"
The Act defines an "oral communication" as "any conversation or words spoken to or by any person in private conversation." CJ § 10-401(2)(i). The term "private conversation" is not defined in the Wiretap Act.[6] The federal wiretap statute defines oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation."18 U.S.C. § 2510(2). Former Chief Judge Gilbert of the Court of Special Appeals, in an early commentary on the Maryland statute, described the definition of the term in the State statute as "considerably more inclusive" than the federal definition. See
Gilbert, supra, at p. 192. However, Judge Gilbert did not elaborate on this characterization of the Maryland statute. Nor have any reported judicial decisions explicated a distinction between the two definitions of "oral communication."
More recently, the courts have characterized the difference in the wording of the two definitions as "slight" and have construed the term in the Maryland statute to incorporate the "reasonable expectation of privacy" standard of the federal definition. Fearnow v. CP Telephone Co., 104 Md. App. 1, 33,655 A.2d 1 (1995), aff'd, 342 Md. 363, 676 A.2d 65 (1996). The Court of Appeals has stated that "when an oral communication is intercepted, determining whether a violation of the Wiretap Act occurred hinges on a jury determination that at least one of the parties had a reasonable expectation of privacy." Fearnow,supra, 342 Md. at 376. See also Malpas v. State,116 Md. App. 69, 83-84, 695 A.2d 588 (1997) (equating phrase "private conversation" with concept of reasonable expectation of privacy);Hawes v. Carberry, 103 Md. App. 214, 220, 653 A.2d 479 (1995) (conversation is "private" within meaning of Act if a participant has a "subjectively and objectively reasonable expectancy of privacy"); Benford v. American Broadcasting Co., 649 F. Supp. 9,11 (D.Md. 1986) (construing Maryland Wiretap Act).
Statements that a person "knowingly expose[s] to the public" are not made with a reasonable expectation of privacy and therefore are not protected as "oral communications" under the State and federal wiretap laws. Malpas v. State, 116 Md. App. 69,695 A.2d 588 (1997). See also John Doe Trader Number One,889 F.2d 240, 242-44 (7th Cir. 1990) (statements made by broker on floor of futures exchange were "expos[ed] . . . to the public" and therefore not "oral communications" under federal statute); Holmanv. Central Arkansas Broadcasting Co., 610 F.2d 542 (8th Cir. 1979) (no violation of federal statute to record loud complaints of municipal judge jailed for public drunkenness as they were not made with expectation of privacy).
In Malpas, the defendant had used a micro-cassette recorder to record the statements of Craigie, whose shouted imprecations to his wife in the apartment next door were so loud that they could be heard in Malpas' apartment. After a later altercation between Malpas and Craigie resulted in criminal charges against Malpas, Malpas attempted to use the recording to impeach Craigie, who was a prosecution witness at trial. The Court of Special Appeals held that creation and use of the tape at trial did not violate the Wiretap Act.[7]
The Court reasoned that Craigie did not enjoy a reasonable expectation of privacy with respect to his shouted statements overheard and recorded by Malpas. Accordingly, the Court concluded, those statements did not constitute an "oral communication" within the meaning of the Wiretap Act. 116 Md. App.at 86. The Court based this conclusion on three observations. First, Malpas could hear Craigie's shouting "with his unaided ear" and did not use an amplifier or sensory enhancing device with the tape recorder. Second, Malpas was lawfully in the place where he overheard the conversation — his own apartment. Finally, the presence of someone in the adjacent apartment who would hear the shouting could reasonably be anticipated by Craigie. The Court summarized: "Statements in one apartment made in a tone of voice so loud as to be audible to persons in adjacent apartments are the functional equivalent of statements knowingly exposed to the public." 116 Md. App. at 86.
Thus, if an officer is recording a conversation with a citizen in accordance with the Police Department's policy — that is, after obtaining the citizen's consent or during a traffic stop after informing the occupants of the car of the recording — and the equipment also records statements of a passerby that would be within the normal earshot of someone in the officer's position, such a recording would not violate the Wiretap Act.[8]
 2. "Willful Interception"
The State Wiretap Act conditions civil and criminal liability on a showing of a "willful interception." "The term `willfully' . . . means more than intentional or voluntary. It denotes either an intentional violation or a reckless disregard of a known legal duty." Benford, supra, 649 F. Supp. at 10; see Fearnowv. CP Telephone Co., supra, 104 Md. App. at 23. In sum, the defendant must know that what he or she is doing is illegal.Hawes, supra, 103 Md. App. at 221-22; see also Earley v.Smoot, 846 F. Supp. 451, 453 (D.Md. 1994) (construing Maryland Wiretap Act).
Like the Maryland Wiretap Act, the federal statute originally used the term "willfully." However, a 1986 amendment, Pub.L. 99-508, § 101(f)(1), diluted the standard of proof under the federal statute by substituting the term "intentionally" — a standard that does not require that the defendant know that the conduct is illegal. See Earley v. Smoot, supra,846 F. Supp. at 453.
The Wiretap Act defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." CJ § 10-401(3).[9] The federal statute contains an identical definition. 18 U.S.C. § 2510(4).
If an officer unintentionally makes an audio recording of an encounter with a citizen, there is no violation of CJ § 10-402(a) because the officer has not willfully intercepted the conversation. Indeed, if only the microphone and not the recording equipment is activated, there may be no interception at all, as the contents of the communication are never "acquired" by the officer.
A Fourth Circuit decision construing the federal statute confirms this analysis. In Sanders v. Robert Bosch Corp., 38 F.3d 736
(4th Cir. 1994), a corporation that had received bomb threats installed equipment to monitor and record incoming calls to its security office. After recording incoming calls for a period of time, the company terminated the recording, although it did not remove the equipment. However, as a result of a design defect, the microphone on the handset of a telephone continued to pick up ambient noise in the room where it was placed and transmit it to the receiver. The corporation's officials were unaware of that feature and none of the conversations that the microphone picked up was monitored or recorded.
The Fourth Circuit held that there was no violation of the federal wiretap statute for two reasons. First, since no one had listened to or recorded the conversations picked up by the microphone, the defendant corporation had never acquired the contents of the communications and, accordingly, there was no "interception" under the statute. Second, the court noted that the federal wiretap statute "requires that interceptions be intentional before liability attaches, thereby excluding inadvertent interceptions." 38 F.3d at 742-43 (quoting Thompsonv. Dulaney, 970 F.2d 744, 748 (10th Cir. 1992)). Even if there was an interception, it could not be deemed "intentional" as no one knew that it was being made.
Thus, even with a change in the standard of intent under the federal statute from "willful" to "intentional," an inadvertent recording did not violate the statute. See also Carr, The Law ofElectronic Surveillance (2d ed.) § 8.1(a)(1) (concluding that inadvertent conduct is not culpable even after 1986 amendments to federal statute). As noted above, the willfulness standard under the Maryland statute requires an even stronger showing of intent.
 III Conclusion
In our opinion, an officer who follows the Police Department policy for recording the audio portion of a videotaped encounter with a citizen would satisfy the criteria for lawful interception of oral communications under the State Wiretap Act. Moreover, an officer who inadvertently makes a recording would not violate CJ § 10-402(a).
 Very truly yours, J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] Ricks v. State, 312 Md. 11, 24, 537 A.2d 612 (1988). Nor is there any similar statute governing video surveillance by police. Rather, the permissibility of that technique is measured in a particular instance under the Fourth Amendment of the U.S. Constitution and its parallel provision in the Maryland Constitution, Article 26 of the Maryland Declaration of Rights.See Ricks, supra, 312 Md. at 28.
[2] The willful interception, use, or disclosure of a protected communication is a felony that carries a potential sentence of 5 years incarceration and a $10,000 fine. CJ § 10-402
(b). A successful plaintiff in a civil action may recover actual damages or liquidated damages ($100 per day or $1,000, whichever is higher), punitive damages, attorney's fees, and costs. CJ § 10-410(a).
[3] Because of the location and planned use of the microphones and video cameras, we discuss only issues concerning the interception of "oral communications," even if the equipment could somehow be modified to intercept wire or electronic communications.
[4] The statute does not require that the officer obtain the consent of all parties to the conversation during a traffic stop. Rather, the officer need only inform them of the interception at the beginning of the conversation. CJ § 10-402(c)(4)(iv).
[5] The statute permits interceptions with one-party consent for investigations of the following offenses:
 Murder, kidnaping, rape, a sexual offense in the first or second degree, child abuse, child pornography, . . . gambling, robbery, any felony punishable under the "Arson and Burning" subheading of Article 27, bribery, extortion, . . . dealing in controlled dangerous substances, . . . fraudulent insurance acts, . . . offenses relating to destructive devices. . ., or any conspiracy or solicitation to commit any of these offenses, or where any person has created a barricade situation and probable cause exists for the investigative or law enforcement officer to believe a hostage or hostages may be involved. . . .
CJ § 10-402(c)(2).
[6] By contrast, the definitions of "wire communication" and "electronic communication" make no reference to privacy or "private" communications. Thus, "privacy is not relevant to determining a violation of the Wiretap Act when a wire communication has been intercepted." Fearnow v. C P TelephoneCo., 342 Md. 363, 376-77, 676 A.2d 65 (1996).
[7] The case reached the appellate court after the circuit court held that the tape was inadmissible, declared a mistrial, and denied Malpas' motion to dismiss the charges on double jeopardy grounds. The defendant then took an interlocutory appeal. 116 Md. App. at 70. When a mistrial is declared in a criminal case over the objection of the defendant, further prosecution of the charges violates the constitutional prohibition against double jeopardy, unless there was a "manifest necessity" for the mistrial. See, e.g., State v. Gorwell, 339 Md. 203, 205,661 A.2d 718 (1995).
[8] It is also notable that many encounters between uniformed police officers and citizens could hardly be characterized as "private conversations." For example, any driver pulled over by a uniformed officer in a traffic stop is acutely aware that his or her statements are being made to a police officer and, indeed, that they may be repeated as evidence in a courtroom. It is difficult to characterize such a conversation as "private."
Similarly, a number of courts have concluded that, for purposes of federal and state electronic surveillance statutes, a suspect who engages in a conversation while seated in a police car does not have a reasonable expectation of privacy in his or her statements. See, e.g., Kansas v. Timley, 975 P.2d 264, (Ct.App. Kan. 1998); United States v. Clark, 22 F.3d 799 (8th Cir. 1994);United States v. McKinnon, 985 F.2d 525 (11th Cir. 1993), cert.denied, 510 U.S. 843 (1993); United States v. Rodriquez, 998 F.2d 1011
(4th Cir. 1993) (unpublished); see also Tex. Atty. Gen. Op. JC-0208, 2000 WL 378883 (April 12, 2000).
[9] The Maryland statute also defines the phrase "electronic, mechanical, or other device" to mean:
Any device or electronic communication other than:
 (i) any telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof, (a) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of business and being used by the subscriber or user in the ordinary course of its business. . .; or (b) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties; or
 (ii) a hearing aid or similar device being used to correct subnormal hearing to not better than normal.
CJ § 10-401(4). The federal statute has a virtually identical definition. 18 U.S.C. § 2510(5).
 *Page 238