653 A.2d 479

Daniel L. HAWES

v.

John L. CARBERRY, et ux.

No. 627, Sept. Term, 1994.

Court of Special Appeals of Maryland.

Feb. 6, 1995.

Daniel L. Hawes, Fairfax, VA, pro se.

Jon A. Hoppe, Bethesda, for appellees.

Argued before WILNER, C.J., and ALPERT and SALMON, JJ.

SALMON, Judge.

On March 5, 1993, appellees, John L. Carberry and his wife, Barbara A. Carberry, filed suit against appellant, Daniel Hawes, and Roy A. Dickan in the Circuit Court for Howard County. The suit alleged that the defendants violated Maryland's Wiretap and Electronic Surveillance Law, Md.Code (1974, 1989 Repl.Vol.), § 10–401 *et seq.*, of the Cts. & Jud. Proc. Article (the "Act"), and requested compensatory and punitive damages, as well as "reasonable attorney's fees and costs."

The case was heard non-jury on March 8, 1994. Mr. Hawes, an attorney licensed in the Commonwealth of Virginia but not in the State of Maryland, appeared as his own counsel. Mr. Dickan also appeared *pro se.*

At the conclusion of plaintiffs' case, Mr. Hawes moved for judgment[1] pursuant to Md.Rule 2–519(b). The motion was supported by a written memorandum. Mr. Hawes asserted in the motion that in order to be found civilly liable, plaintiffs must plead and prove that he had "wilfully" violated the Carberrys' rights under the Act, and this required a showing that he had knowledge that plaintiffs "had rights under that specific statute, and that he [Mr. Hawes] had knowingly and intentionally violated [those] rights." The trial judge reserved ruling on the motion and advised that he would "consider the motion at the end of the case." At the conclusion of the case, Mr. Hawes again moved for judgment, and the trial judge again deferred ruling and stated that he would consider any arguments in support of the motion when Mr. Hawes gave his closing argument.

In closing argument, Mr. Hawes asserted, *inter alia,* that it did not matter whether he had secretly taped a conversation

---

1. Mr. Hawes incorrectly called his pleading a "Motion to Dismiss." *Compare,* Md.Rule 2–322.

between himself and the Carberrys because plaintiffs had failed to offer "any evidence that suggests that I knew [at the time of the secret taping] anything about what Maryland law was or that I had any knowledge that makes me a willful violator of [the Act]."

Counsel for the Carberrys argued at trial that plaintiffs were required to prove that Mr. Hawes intended to secretly record a conversation between them but that it was "positively absurd" for Mr. Hawes to claim that ignorance of the law prevented the imposition of civil liability under the Act.

After closing argument, the trial judge granted judgment in favor of Mr. Dickan. He then stated:

I don't find the fact that Mr. Hawes testified that he had no specific knowledge that his conduct was violative of [the Act] precludes the plaintiff from recovering. So it's on all fours right there is [sic] anybody wants to make any, take any further action with reference to that issue. Clearly, I'm satisfied that Mr. Hawes intended to do the very act that he did, namely to intercept the conversation, communication between he and Mr. and Mrs. Carberry, and I find that to be violative of the Act. I will award actual damages—or damages as required by the statute in the amount of $1,000 to Mr. and Mrs. Carberry, enter judgment in their favor against Mr. Hawes.

The trial judge proceeded to deny punitive damages and awarded the Carberrys $750 in attorney's fees, plus costs. The trial judge did not explicitly rule on Mr. Hawes' Motion for Judgment, but, as a practical matter, his ruling in favor of the Carberrys amounted to a denial of that motion.

On appeal, Mr. Hawes raises numerous issues. Only one major issue needs to be decided. For clarity, we have rephrased the issue presented as:

Did the trial judge err in denying, at the conclusion of the entire case, appellant's Motion for Judgment?

## STANDARD OF REVIEW

We shall relate the facts presented at trial in the light most favorable to the Carberrys, who prevailed below. This Court said in *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 353, 517 A.2d 1122 (1986):

> Rule 2–519(b) may be dichotomized. In a *non-jury* trial, when a party has moved for judgment, the court is allowed as trier of fact to determine the facts and render judgment thereon. The trial judge is not compelled to make any evidentiary inferences whatsoever in favor of the party against whom the motion for judgment is made. When the motion for judgment is made "under any other circumstances," *viz,* in a *jury* trial, the trial judge must consider the evidence and inferences arising therefrom in the light most favorable to the non-moving party.
>
> In the case *sub judice,* the matter was tried by the court. Thus, the trial judge was allowed to evaluate the evidence, *as though he were the jury,* and to draw his own conclusions as to the evidence presented, the inferences arising therefrom, and the credibility of the witnesses testifying.

(Emphasis in original).

## FACTS

Mr. Hawes was hired by Office Systems Integration ("OSI") to collect money from Mr. Carberry and two others. On February 19, 1992, Mr. Hawes obtained a judgment, in Virginia, in favor of OSI in the amount of $423,811. The judgment was against Mr. Carberry; WTM, Inc.; and Franz P. Nader.

At about 6:00–6:30 p.m. on March 11, 1992, Mr. Hawes and Mr. Dickan, President of OSI, went to the Carberrys' Columbia, Maryland, townhouse. The purpose of this unannounced visit was to discover the address and other information about Franz Nader and WTM, Inc. While Mr. Dickan waited in a parked automobile, Mr. Hawes went to the front door of the Carberry home and knocked. Mr. Carberry answered the door.

With the front door ajar, appellant and the appellees conversed. Mr. Carberry stood on the threshold of his home during the conversation; Mr. Hawes stood outside about one to one-and-one-half feet away; and Mrs. Carberry stood inside the house and closely behind her husband in a position where she could see Mr. Hawes. It was dark outside and the Carberrys could see no one else in the vicinity. Mr. Hawes introduced himself and then advised that OSI had a judgment in Virginia against Mr. Carberry and others for "a little less than one-half a million dollars." During the unfriendly conversation that ensued, Mr. Carberry asserted that he had no knowledge of the Virginia suit, and therefore, he adamantly maintained, the judgment was invalid. Mr. Hawes said he felt that the judgment was valid and enforceable but said he had made the visit to obtain Mr. Carberry's cooperation regarding collection of the judgment from the other judgment debtors. Mrs. Carberry interjected herself into the conversation from time to time, mainly by commenting that Mr. Hawes' visit was "unprofessional" and advising her husband to terminate the conversation immediately by closing the door. The conversation concluded with Mr. Hawes leaving his card and Mr. Carberry advising that he would consult with his attorney. This entire conversation was secretly taped by Mr. Hawes without the consent or knowledge of either Mr. or Mrs. Carberry.

On March 14, 1992, three days after the aforementioned conversation, Mr. Hawes, aided by a Maryland attorney, brought an action in Howard County, Maryland, to enroll the Virginia Judgment. On January 21, 1993, a Motion for Sanctions was filed by Mr. Hawes against Mr. Carberry and his attorney. This motion was filed in the suit to enroll judgment, and attached to the motion was a transcript of the aforementioned secretly recorded March 11, 1992 conversation. This filing provided the Carberrys with their first notification that their conversation with Mr. Hawes had been taped without their knowledge.

At the trial of the case *sub judice,* the Carberrys called Mr. Hawes as an adverse witness. During their counsel's exami-

nation of Mr. Hawes, no attempt was made to show that Mr. Hawes knew (on the date the Carberrys' conversation was secretly taped) that he was violating the Carberrys' rights under the Act. Moreover, appellees did not attempt in any other manner to show appellant's state of mind on the date in question.

Mr. Hawes called himself as a defense witness. He posed the following question and answered it as follows:

Q. What experience have you had with respect to wiretapping and eavesdropping statutes in the past?

A. The simple answer is none. Before I received notice of this action and the criminal charges, I had never had occasion to read the wiretapping and eavesdropping law of any state much less Maryland. And my knowledge of it was what I had obtained from other attorneys, which was basically that *federal law gives a person the right to make a record of his own conversation with other people.* Subsequent to these charges having been made and this case being filed, I've had occasion to research the law in more depth and now I know more about Maryland's law. But at the time any of this happened, I had been in Maryland maybe four times in the last ten years all related to this one case, and I have no prior knowledge of anything related to this before having been served. *And I believed that federal statute authorized me to do what I was doing.* (Emphasis added).

### DISCUSSION

Section 10–402 of the Act states in pertinent part:
(a) Unlawful acts—Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral or electronic communication; . . . .

Section 10–401(c) of the Act defines "oral communication" as meaning "any conversation or words spoken to or by any person in private conversation."

The evidence was sufficient to show that the March 11, 1992 conversation between the Carberrys and Mr. Hawes was a private conversation within the meaning of the Act because appellees had both a subjectively and objectively reasonable expectancy of privacy when they talked to appellant. *Fearnow v. C & P Telephone Co. of Md., et al.*, 104 Md.App. 1, 32–34, 655 A.2d 1, 16–18 (1995). *See also Benford v. American Broadcasting Companies, Inc.*, 649 F.Supp. 9, 11 (D.Md., 1986).

The Maryland Act was modeled after the federal wiretap statute, 18 U.S.C. § 2510 *et seq.*, but it is, in at least one respect, more stringent. The Maryland Act, with exceptions not here relevant, requires the prior consent of all parties before conversation may be recorded. Cts. & Jud.Proc. Article, § 10–402. *See also Petric v. State*, 66 Md.App. 470, 476, 504 A.2d 1168 (1986). Under the federal act, if one party to the conversation consents, taping is not prohibited. 18 U.S.C. § 2511(2)(d). Because Mr. Hawes was a party to the taping and since he consented to it, the secret taping on March 11, 1992 did not violate federal law.

Whether the trial judge should have granted Mr. Hawes' motion for judgment based on Maryland law, depends, in part, on the meaning of the word "wilfully" as used in § 10–402(a)(1). We recently discussed this issue in *Fearnow, supra*. *Fearnow*, involved a claimed violation of the Act by Donald Wood, a C & P Telephone Company supervisor. Leon C. Fearnow was a police officer who worked at police headquarters in Hagerstown, Maryland. Mr. Wood was successfully recruited by Hagerstown police officials to assist in the installation of a tape recorder that would secretly tape record all phone calls made on Mr. Fearnow's office phone. Prior to installation of the recorder, Mr. Wood was told by police officers only that "there was a problem" at headquarters. *Fearnow*, 104 Md.App. at 17, 655 A.2d at 8. At his trial, the issue of Mr. Wood's intent was disputed. The *Fearnow* court summed up the difference in viewpoint as to what the evidence showed regarding Mr. Wood's intent:

Appellant [plaintiff below] points to the following facts, based on Wood's response to cross-examination questions regarding the C & P company manual, that he contends "clearly show[ ] a reckless disregard of a known legal duty": no court order was ever obtained to wiretap appellant's telephone; Wood knew that a court order was necessary to install the wiretap; Wood had a legal duty to inquire as to the officer's authorization to implement the wiretap; Wood testified that the C & P manual informed him that it was a criminal offense to violate "the secrecy of communications."

Counsel for Wood, however, countered by asking Wood his interpretation of the scope of the C & P company manual. Wood explained that "this document was published for C & P employees to protect the C & P network." Wood testified that he did not understand the company manual to apply to equipment owned by its customers, i.e., the Hagerstown Police Department, and therefore he believed he was under no legal duty to inquire as to whether the police needed, applied for, or actually obtained a court order.

*Id.,* at 24–25, 655 A.2d at 25 (footnote omitted).

In *Fearnow,* as here, the Court was called upon to interpret the word "wilfully" as used in § 10–402(a)(1).[2] The Court said:

---

**2.** For a thorough discussion of the word "willfully" as used (prior to a 1986 amendment) in 18 U.S.C. § 2510–2520 of the federal counterpart to Maryland's Wiretap Act, see Clifford S. Fishman, *Wiretapping and Eavesdropping,* cum. supp., issued Nov., 1994, § 7.13(a), pages 60–65 and § 7.18, pages 66–69 (hereafter "Fishman"). Prior to January 20, 1987, 18 U.S.C. § 2511(a) made it a crime to, *inter alia,* "willfully intercept a wire or oral communication." According to Fishman, page 60, "[T]here was widespread uncertainty and disagreement among the courts as to "the precise meaning" of the word "willfully." Most courts rejected the notion that "willfully" meant "intentionally" and held that the term meant "a conscious or reckless disregard of the law" or "bad purpose ... without justifiable excuse, ... stubbornly, obstinately [or] perversely." *Id.* at 62–64. After January 20, 1987, the word "willfully" was changed to "intentionally" in 18 U.S.C. § 2511(1). According to Fishman, the purpose of that change was to "underscore that inadvertent interceptions are not crimes." *Id.* at 66.

To establish liability under the Maryland Wiretap Act, appellant must prove that Wood acted wilfully. *Earley v. Smoot*, 846 F.Supp. 451, 453 (D.Md.1994) (interpreting the Maryland Wiretap Act); *Benford v. ABC*, 649 F.Supp. 9, 10 (D.Md.1986) (same). The term "wilfully" means "more than intentional or voluntary. It denotes either an intentional violation or a reckless disregard of a known legal duty." *Id.* ***Indeed, as the federal district court explained in Earley, the violator must know that what he or she is doing is illegal. Earley, 846 F.Supp. at 453.***

*Id.*, at 23–24, 455 A.2d at 12 (footnote omitted) (emphasis added).

Later in the opinion, the *Fearnow* Court discussed whether the trial judge should have given an instruction, proposed by plaintiff, that "[a] person is presumed to know the law." *Id.* at 36, at 42, 455 A.2d at 21. The Court held that plaintiff's proposed instruction was properly rejected and explained:

Violation of the Maryland Wiretap Act requires wilfulness on behalf of the alleged violator. *See Earley*, 846 F.Supp. at 453; *Benford*, 649 F.Supp. at 10. Wilfulness is defined as "either an intentional violation or a reckless disregard of a known legal duty." *Id.* "[W]hen the law makes knowledge of some requirement an element of the offense, it is totally incorrect to say that ignorance of such law is no excuse or that everyone is presumed to know such law." *United States v. Golitschek*, 808 F.2d 195, 203 (2d Cir.1986); *accord United States v. Maniktala*, 934 F.2d 25, 29 (2d Cir.1991) ("The 'combination of an instruction that the charged offenses require some knowledge of the law and an instruction that everyone is presumed to know the law was erroneous' " (citing *Golitschek*, 808 F.2d at 201)).

*Id.* at 36–37, at 42–43, 455 A.2d at 21. The Court in *Fearnow* ruled that under the facts of that case a factual issue was presented for the jury to resolve as to whether Mr. Wood had acted "wilfully" within the meaning of § 10–402(a)(1) when he assisted in the installation of the tape recorder on plaintiff's phone.

Having established the meaning of "wilfully" as used in § 10–402(a)(1) of the Act, the question then becomes whether, taking the evidence in the light most favorable to appellees, there was adequate proof that Mr. Hawes knew he was acting illegally when he taped his conversation with the Carberrys. While "[t]he state of a man's mind is as much a matter of fact as the state of his digestion," *Noffsinger v. Noffsinger,* 95 Md.App. 265, 275, 620 A.2d 415 (1993) (quoting Lord Bowen in *Edgington v. Fitzmaurice,* 29 Ch.D. 459, 483 (1885), that fact usually cannot be proven directly. Rather, it is a "matter determined by drawing reasonable inferences[3] from admitted conduct." *Department v. Hager,* 96 Md.App. 362, 371 (1993). Unlike the plaintiff in *Fearnow,* there was no effort made by plaintiffs in this case to prove that Mr. Hawes knew he was acting illegally. Instead, the Carberrys' position, both at trial and on appeal, has been that no such proof is necessary. On the one side, for the trial judge to consider, was Mr. Hawes' sworn testimony that he did not know (when he taped appellees' conversation) that he was acting illegally because 1) he had never read the Act and 2) he "believed the federal statute authorized" him to record the March 1992 conversation secretly. The trial judge was not, of course, obliged to believe Mr. Hawes' "intent" testimony.[4] But assuming, *arguendo,* that the testimony was rejected, there was no probative evidence to counterbalance it. While appellees proved that appellant was a Virginia lawyer, it could not be legitimately inferred from this fact that he knew the wiretap law of all 50 states or even that he knew the relevant law in Maryland or, for that matter, any other jurisdiction in the Washington metropolitan area.

In sum, the Carberrys were required to show that Mr. Hawes intended to violate the Carberrys' rights under the

---

**3.** For the appropriateness, *vel non,* of an inference, see *Chesapeake & Potomac Telephone Co. v. Hicks,* 25 Md.App. 503, 524–25, 337 A.2d 744 (1975).

**4.** The trial judge did not explicitly say whether he believed the "intent" testimony. It would appear, however, when his opinion is read in context, that the trial judge probably accepted as true Mr. Hawes' "intent" testimony but found it to be irrelevant.

Act; they failed to do so; accordingly, the trial judge should have granted Mr. Hawes' Motion for Judgment.

## *APPELLANT'S MOTION TO REMAND*

After briefs were filed, appellant filed a motion requesting us to remand the case to the Circuit Court for Howard County with instructions to that Court to dismiss this suit because (purportedly) the trial court lacked jurisdiction to hear the case. For reasons that need not be analyzed, appellant contends that the Act is "void" and, therefore, the circuit court had no "subject matter" jurisdiction to hear the Carberrys' law suit. Assuming, *arguendo*, that the Act is somehow "void," this contention goes to the substantive merits of the Carberrys' suit rather than subject matter jurisdiction. Md. Code (1974, 1984 Repl.Vol., 1994 Cum.Supp.), § 1–501 of the Cts. & Jud.Proc. Article provides:

> The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.

Movant does not contend that any exception to § 1–501 is here relevant. Therefore the motion is denied.

**JUDGMENT REVERSED;**

**COST TO BE PAID BY APPELLEES.**