## CRIMINAL LAW

**WIRETAP AND ELECTRONIC SURVEILLANCE – POLICE OFFICERS – EVIDENCE – WHEN BODY-WORN CAMERA RECORDINGS VIOLATE THE MARLAND WIRETAP ACT – WHETHER OFFICER CAN STILL TESTIFY AS TO INDEPENDENT OBSERVATIONS**

July 18, 2025

*Colonel Roland L. Butler, Jr.*
*Superintendent, Maryland State Police*

You have asked a question involving police officers' use of body-worn cameras and the exclusionary provision of Maryland's wiretap statute, which generally requires the suppression of evidence derived from a recording that is illegal under the wiretap statute. Specifically, you ask: If a court suppresses a recording from a body-worn camera under the law's exclusionary provision, may the officer who made the recording still testify about what the officer observed independently of the body-worn camera footage?

Before addressing this question, we first examine whether the Maryland wiretap statute applies to police officers' use of body-worn cameras in the first place. As we explain below, it is our opinion that the law applies to a police officer's use of a body-worn camera only when the officer purposely uses the device with the intent to record a private conversation. Moreover, the officer violates the wiretap statute only when the officer's use of the body-worn camera does not satisfy each of five conditions in a statutory exception for the use of such devices and does not fall within any other exceptions in the wiretap statute.

Assuming that the wiretap statute applies to a specific instance of a police officer using a body-worn camera to record a private conversation, and that none of the statute's exceptions permit the recording, a court must suppress the recording under the statute's exclusionary provision. But that provision does not prohibit the officer from testifying about what the officer observed independently.

# I
# Background

### A. *Body-Worn Cameras*

Body-worn cameras are small recording devices that can be attached to clothing, eyeglasses, or headwear. Jonathan Hayes & Lars Ericson, Nat'l Inst. of Justice, U.S. Dep't of Justice, *A Primer on Body-Worn Cameras for Law Enforcement* 5-6 (Sept. 2012), https://permanent.fdlp.gov/gpo231473/239647.pdf. Police officers commonly wear these devices on their uniforms, attached to a shirt pocket or a badge. *Id.* at 5; Marc Jonathan Blitz, American Constitution Soc'y, *Police Body-Worn Cameras: Evidentiary Benefits and Privacy Threats* 3 (May 2015). Body-worn cameras can record both video and audio, producing footage similar to what a cell phone camera captures. Daniel Bernard Trimble, *Body-Worn Cameras: The Implementation of Both the Police Department's Rollout of Cameras and the State's Attorney's Office's Processing of Data for Discovery*, 47 U. Balt. L. Rev. 379, 384 (2018).

### B. *Maryland's Wiretap Act*

Maryland's Wiretapping and Electronic Surveillance Act (the "Wiretap Act" or "Act") imposes certain restrictions on recording audio. The Act establishes a general prohibition on "willfully intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept[]" some types of communications. Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 10-402(a)(1). The Act then sets forth several exceptions to the general prohibition, such as when all parties to a communication consent to the interception.[1]

---

[1] *See* CJP § 10-402(c)(3) (allowing "a person to intercept a wire, oral, or electronic communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act"). This exception, commonly called the "two-party consent provision," *e.g.*, *Mustafa v. State*, 323 Md. 65, 70 (1991), distinguishes the Wiretap Act from its federal counterpart and the laws in most other states, which allow conversations to be recorded even if only one of the participants consents to the recording, Carol M. Bast, *What's Bugging You?: Inconsistencies and Irrationalities of the Law of Eavesdropping*, 47 DePaul L. Rev. 837, 869 (1998); *see also id.* Appendix B (cataloging the federal act and various state wiretapping statutes).

The Wiretap Act generally does not apply to *video-only* surveillance—that is, video recordings that do not capture audio. *See, e.g.*, *Deibler v. State*, 365 Md. 185, 200 (2001); *see also* 85 *Opinions of the Attorney General* 225, 226 (2000) ("The Wiretap Act does not address video surveillance alone."); Letter from Robert N. McDonald, Chief Counsel, Opinions & Advice, to Del. Samuel I. Rosenberg, at 2 (July 7, 2010) ("Rosenberg Letter") ("[V]ideo recording alone, without the capture of an audio communication, is not regulated by the Wiretap Act.").[2]  That is because of how the statute defines the relevant terms.

More specifically, the Act concerns only the willful interception of "wire, oral or electronic communications."  CJP § 10-402(a)(1).  "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." CJP § 10-401(10).  "Wire communication[s]," which include landline telephone calls, *see Fearnow v. Cheseapeake & Potomac Tel. Co. of Maryland*, 104 Md. App. 1, 34 (1995), *rev'd on other grounds*, 342 Md. 363 (1996), are "aural transfer[s]" that depend on "wire, cable, or other like connection[s]," CJP § 10-401(18). "Electronic communications," which include cell phone calls, *see Davis v. State*, 199 Md. App. 273, 286 (2011), more broadly encompass "transfer[s] of signs, signals, writing, images, sounds, data, or intelligence of any nature," but only those that use "wire, radio, electromagnetic, photoelectric, or photooptical system[s]," CJP § 10-401(5).[3]  Finally, "'[o]ral communication'

_____

[2] To be sure, other statutes impose restrictions on video surveillance. *See* Md. Code Ann., Crim. Law § 3-901(c) (prohibiting "visual surveillance," defined to include surveillance by camera, "of an individual" in "a dressing room or restroom in a retail store" "without the consent of that individual"); *id.* § 3-902(c) ("A person may not with prurient intent conduct or procure another to conduct visual surveillance of: (1) an individual in a private place without the consent of that individual; or (2) the private area of an individual by use of a camera without the consent of the individual under circumstances in which a reasonable person would believe that the private area of the individual would not be visible to the public, regardless of whether the individual is in a public or private place."); *id.* § 3-903(c) ("A person may not place or procure another to place a camera on real property where a private residence is located to conduct deliberate surreptitious observation of an individual inside the private residence.").

[3] A communication that meets the definition of "wire communication" cannot be an "electronic communication."  CJP § 10-401(5)(ii).

means any conversation or words spoken to or by any person in private conversation." CJP 10-401(13)(i).[4]

Under these definitions, a video recording does not intercept wire or electronic communications. *See Deibler*, 365 Md. at 199-200. But it might intercept oral communications, if the recording captures audio. For purposes of the Wiretap Act, the interception of an oral communication contemplates "an *aural* interception—hearing the conversation directly or making a recording of it that can be listened to simultaneously or at a later time." *Id.* at 200 (emphasis added). So the Act may apply to a video recording that also captures audio. *See id.* at 200-201 (concluding that a device that recorded both video and audio intercepted an oral communication, in violation of the Wiretap Act). But "a video recording without audio or without oral communication is not prohibited under the wiretap statute." *Holmes v. State*, 236 Md. App. 636, 654 (2018); *see also Ricks v. State*, 312 Md. 11, 20 (1988) (recognizing that "[t]here is nothing in [the] Act, express or implied, which prohibits or in any way undertakes to regulate video surveillance" that does not capture audio).[5]

## C. The Wiretap Act's Body-Worn Camera Exception

By 2015, at least fifteen law enforcement agencies in Maryland were using body-worn cameras.[6] But some police officers in the State worried that using the devices could violate the Wiretap Act. For example, the Baltimore County Police Department used cameras attached to stun guns that captured video only, *see Hearing on H.B. 533 Before the House Judiciary Comm.*, 2015 Leg., Reg. Sess., at 1:33:21-1:33:26, 1:34:39-1:34:47 (Mar.

---

[4] "'Oral communication' does not include any electronic communication." CJP § 10-401(13)(ii); *accord* CJP § 10-401(5)(ii) ("'Electronic communication' does not include . . . [a]ny . . . oral communication . . . .").

[5] *But see Deibler*, 365 Md. at 200 n.4 (raising, but not answering, the question of "whether a video-only interception of a conversation may constitute a violation of [the Wiretap Act] if, by watching or playing the video, it would be possible, through lip-reading or some electronic means, to identify the words spoken").

[6] *See* Workgroup on the Implementation & Use of Body Worn Cameras by Law Enforcement, *Final Report* 4 (Dec. 2014) (noting that fifteen agencies in Maryland were using the devices); Floor Report, Senate Judicial Proc. Comm., H.B. 533, 2015 Leg., Reg Sess., at 3 (noting that, as of January 16, 2015, nineteen law enforcement agencies in Maryland had purchased or begun using body-worn cameras).

12, 2015) (statement of Major Mark Warren), but the department decided not to use body-worn cameras—capable of recording both video *and audio*—unless the General Assembly amended the Wiretap Act, *see Hearing on H.B. 533 Before the Senate Judicial Proc. Comm.*, 2015 Leg., Reg. Sess., at 1:56:16-1:56:33, 2:00:21-2:00:29, 2:15:20-2:15:22 (Apr. 7, 2015) (statements of Baltimore County State's Attorney Scott Shellenberger). Indeed, several law enforcement officials raised concerns about whether the Wiretap Act allowed police to use body-worn cameras.[7]

In December 2014, a workgroup studying police officers' use of body-worn cameras recognized this ambiguity in the law. In its final report, the workgroup summarized that our Office, "Maryland courts, prosecutors, and defense attorneys seem[ed] to agree that using [body worn cameras] to record the audio and video interaction between police and civilians on public streets and in public places [did] not violate Maryland's wiretap law." Workgroup on the Implementation & Use of Body Worn Cameras by Law Enforcement, *Final Report* 10 (Dec. 2014). But the workgroup said it was "less clear" whether officers could lawfully use body-worn cameras in a home or other non-public space. *Id.*

---

[7] *See Hearing on S.B. 628 Before the Senate Judicial Proc. Comm.*, 2015 Leg., Reg. Sess., at 2:03:25-2:03:32 (Feb. 26, 2015) (Prince George's County Sheriff Melvin High testifying that there was "ambiguity regarding the wiretap" law's application to body-worn cameras); *Hearing on H.B. 533 Before the House Judiciary Comm.*, 2015 Leg., Reg. Sess., at 2:10:52-2:11:17 (Mar. 12, 2015) (John Fitzgerald, Chief of the Chevy Chase Village Police Department, testifying that most police-citizen interactions likely did not fall within the scope of the Wiretap Act but noting that some might, and encouraging lawmakers to amend the Act); *Hearing on S.B. 628 Before the Senate Judicial Proc. Comm.*, 2015 Leg., Reg. Sess., at 1:54:37-1:54:55, 2:00:07-2:00:35 (Feb. 26, 2015) (Baltimore County Police Chief Jim Johnson testifying that lawmakers should provide "clarification" that using body-worn cameras would not violate the Wiretap Act); *see also* Police Executive Research Forum, *Implementing a Body-Worn Camera Program: Recommendations and Lessons Learned* 14 (2014) (asserting that "two-party consent" laws, which include the Wiretap Act, could "create challenges to implementing a body-worn camera program"); Marc Jonathan Blitz, American Constitution Soc'y, *Police Body-Worn Cameras: Evidentiary Benefits and Privacy Threats* 16 (May 2015) (stating that "wiretap laws [that] require that both parties consent to recording of audio conversations" "could conceivably make it illegal for police in some circumstances to record interactions with citizens without their consent").

In 2015, lawmakers sought to resolve this ambiguity by amending the Wiretap Act to include the language that now appears in § 10-402(c)(11) of the Courts and Judicial Proceedings Article. *See Hearing on H.B. 533 Before the Senate Judicial Proc. Comm.*, 2015 Leg., Reg. Sess., at 1:48:08-1:48:16 (Apr. 7, 2015) (statement of Del. Sydnor that police officers using body-worn cameras would be on "more firm ground" if the General Assembly amended the Wiretap Act); Senate Floor Proceedings No. 61, 2015 Leg., Reg. Sess., at 3:20:53-3:20:57 (Apr. 10, 2015) (statement of Sen. Zirkin that "[t]he legality of" using body-worn cameras was "unclear . . . without legislation"). This provision authorizes "a law enforcement officer in the course of the officer's regular duty to intercept an oral communication" if the officer satisfies five conditions:

> 1. The law enforcement officer is in uniform or prominently displaying the officer's badge or other insignia;

> 2. The law enforcement officer is making reasonable efforts to conform to standards in accordance with § 3-511 of the Public Safety Article for the use of body-worn digital recording devices or electronic control devices capable of recording video and oral communications[8]

> 3. The law enforcement officer is a party to the oral communication;

> 4. Law enforcement notifies, as soon as is practicable, the individual that the individual is being recorded, unless it is unsafe, impractical, or impossible to do so; and

> 5. The oral interception is being made as part of a videotape or digital recording.

CJP § 10-402(c)(11)(ii).[9]

---

[8] Section 3-511 of the Public Safety Article required the Maryland Police Training and Standards Commission, by January 1, 2016, to develop and publish a policy for the use of body-worn cameras by police.

[9] On October 1, 2025, this provision will apply not only to "law enforcement officers" but also to correctional officers. *See* 2025 Md. Laws, ch. 608.

This body-worn camera provision is one of eleven exceptions to the Wiretap Act's general prohibition against the interception of wire, electronic, or oral communications. *See* CJP § 10-402(c). Other exceptions allow, for example, police officers to videorecord traffic stops, *id.* (c)(4), and to intercept communications to provide evidence of certain crimes, such as murder and rape, *id.* (c)(2). To be clear, however, the existence of an exception authorizing officers to use body-worn cameras does not mean that the statute applies every time an officer uses such a device. Section 10-402(c)(11) merely carves out an exception, *when the Act applies*, to shield police officers from criminal and civil liability if they use body-worn cameras consistent with five enumerated conditions.

### D.  The Act's Exclusionary Provision

When the interception of a communication violates the Wiretap Act—because it involves the willful interception of a wire, electronic, or oral communication that is not covered by any of the Act's exceptions—the Act makes it unlawful to willfully disclose or use "the contents" of the communication, "knowing or having reason to know that the information was obtained . . . in violation of [the Act]." CJP § 10-402(a)(2) & (3). The Act also prohibits the use, in court proceedings, of evidence derived from an unlawful interception. This exclusionary provision states that:

> [W]henever any wire, oral, or electronic communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of [the Wiretap Act].

CJP § 10-405(a).

## II
## Analysis

Your question is:  When a court applies the Wiretap Act's exclusionary provision to suppress a recording made by a police officer's body-worn camera, may the officer who made the

recording still testify about what the officer observed independently of the body-worn camera footage?

Before addressing this question, we examine the premise—that is, whether the Wiretap Act applies in the first place when a police officer uses a body-worn camera. Our Office has long said that "the vast majority of police interactions with citizens that would be captured by a body camera worn by an officer" are "outside of the scope of" the Wiretap Act. Letter from Jeremy M. McCoy, Assistant Attorney General, to Sen. Bobby A. Zirkin, at 1 (Mar. 9. 2015). We thus consider, as a preliminary matter, when the Act applies to a police officer's use of a body-worn camera.

## A. The Wiretap Act's Applicability to Police Officers' Use of Body-Worn Cameras

### 1. "Oral Communication"

As already noted, *see supra* Part I.B, the Act applies to the interception of wire, electronic, or oral communications. "The typical encounter between a citizen and police officer does not involve a wire or electronic communication." Rosenberg Letter at 4; *see also Deibler*, 365 Md. at 199-200 (noting that video surveillance does not involve the interception of wire or electronic communications). Thus, whether the Act applies to a police officer's use of a body-worn camera "turn[s] on whether a recording of the audio portion of such an encounter constitutes the interception of an 'oral communication' protected by the Act." Rosenberg Letter at 4.

The Act defines "oral communication" to mean "any conversation or words spoken to or by any person in private conversation." CJP § 10-401(13)(i). Although the statute does not define "private conversation," the Supreme Court of Maryland has "consistently interpreted the word 'private' to be consistent with Fourth Amendment jurisprudence." *Agnew v. State*, 461 Md. 672, 685 (2018).[10] Under "the two-pronged [Fourth Amendment] inquiry applicable to search and seizure cases," an exchange is a "private conversation" if a participant has a "reasonable expectation of privacy"—that is, the "person has exhibited an actual (subjective) expectation of privacy, and . . . that . . .

---

[10] The Fourth Amendment to the United States Constitution establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV.

expectation [is] one that society is prepared to recognize as 'reasonable.'" *Id.* & n.5 (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

"A person's reasonable expectation of privacy is a matter to be considered on a case-by-case basis, taking into consideration its unique facts and circumstances." *Benford v. American Broad. Co.*, 649 F. Supp. 9, 11 (D. Md. 1986) (internal quotation marks omitted) (discussing the Wiretap Act). Courts have considered such factors as the volume of a conversation, the proximity of other individuals who might overhear the conversation, whether the speakers have taken affirmative steps to shield their privacy, and the location of the conversation. *E.g.*, *Kee v. City of Rowlett*, 247 F.3d 206, 213-15 (5th Cir. 2001).

On the few occasions that Maryland courts have considered the privacy of a conversation under the Wiretap Act, they have indicated that a person may have a greater expectation of privacy in a discussion at their home, away from others who could overhear the conversation. *See Hawes v. Carberry*, 103 Md. App. 214, 217-20 (1995) (concluding that a conversation at the threshold of a home was private), *abrogated on other grounds by Deibler v. State*, 365 Md. 185 (2001); *see also Malpas v. State*, 116 Md. App. 69, 84 (1997) (recognizing "that 'the very fact that a person is in his own home raises a reasonable inference that he intends to have privacy'" (quoting *United States v. Taborda*, 635 F.2d 131, 138 (2d Cir. 1980))). Thus, when a married couple spoke to a stranger at the threshold of the couple's home, the Appellate Court of Maryland concluded that the couple had a reasonable expectation that the conversation was private. *Hawes*, 103 Md. App. at 217-20. The court noted that, when the stranger knocked on the door, the husband answered and stood at the threshold of the home, "[w]ith the front door ajar." *Id.* at 218. His wife stood inside the house, "closely behind her husband," and the stranger stood only about one to one-and-a-half feet away from the husband, just outside the home. *Id.* The stranger introduced himself and advised the couple that he had obtained an out-of-state money judgment against the husband. *Id.* The conversation took place in the evening, when it was dark outside, and the married couple could see no one else in the vicinity. *Id.* Unbeknownst to the couple, the stranger secretly taped the conversation. *Id.* These facts, the court concluded, were sufficient to show that the couple "had both a subjectively and objectively reasonable expectancy of privacy" and, thus, the encounter "was a private conversation within the meaning of the Act." *Id.* at 220.

However, "[w]hat a person knowingly exposes to the public, even in his own home or office," is not protected under the Wiretap Act. *Malpas*, 116 Md. App. at 84 (quoting *Katz*, 389 U.S. at 351). Thus, when a man in his apartment shouted during a telephone conversation "loud enough to be heard through the walls" into the adjoining apartment, the Appellate Court concluded that "he had no reasonable expectation that the content of his conversation was private." *Id.* at 76, 83-84. The court also found that his neighbor in the adjacent apartment, who recorded the shouting on a micro-cassette recorder, did not illegally intercept "words spoken to or by any person in *private* conversation." *Id.* at 83-84. The court emphasized that the neighbor was entitled to be in his own apartment, the man shouting could have reasonably anticipated that someone would be there, and the neighbor who made the recording "needed only his unaided ear to decipher what [the other man] was shouting." *Id.* at 86. Similarly, as to conversations in public places, individuals generally enjoy a lower expectation of privacy. *See, e.g.*, Letter from Jeremy M. McCoy, Assistant Attorney General, to Del. Samuel I. Rosenberg, at 5 (Jan. 14, 2015) ("Certainly, an interaction between an officer and a citizen taking place in a public setting, such as a park or during a traffic stop on the street, would likely be deemed less reasonably private than the same interaction occurring on private property."). Thus, communications are less likely to qualify as "private conversations" when they occur in places like bank lobbies,[11] public buses,[12] meetings open to the public,[13] or

---

[11] *See* Letter from Kathryn M. Rowe, Assistant Attorney General, to Del. Christopher T. Adams, at 2 (Jan. 13, 2017) ("Adams Letter") ("[I]n most circumstances, a bank is a public place in which a person has no reasonable expectation of privacy in statements made in the hearing of others" (citing *United States v. Wells*, 739 F.3d 511, 518 (10th Cir. 2014))).

[12] *See* Letter from Dan Friedman, Counsel to the General Assembly, to Del. Frank M. Conaway, Jr., at 2 (Dec. 13, 2012) ("[I]t is well settled that one has a diminished expectation of privacy in a vehicle, particularly a vehicle used for public transportation.").

[13] *See* Letter from Kathryn M. Rowe, Assistant Attorney General, to Sen. Karen Lewis Young, at 1 (June 20, 2023) ("[A] person has no reasonable expectation of privacy in statements made in a [homeowners association] meeting that is open to the public."); Letter from Kathryn M. Rowe, Assistant Attorney General, to Sen. Richard S. Madaleno, Jr., at 2 (May 12, 2009) ("[I]t appears that a meeting where anyone who wishes to attend is welcome, or where minutes are taken that will be available to people who did not attend, or where special care is not taken to limit the meeting to those who are unlikely to talk to others about what happened, would not be a place where speakers would have a 'reasonable expectation of privacy' that would bring them within the protection of the Wiretap Act").

on the front porches of homes with clearly visible doorbell cameras.[14]

Even in public places, however, individuals may have a reasonable expectation of privacy when they take steps to keep others from overhearing their conversation—for example, by lowering their voices or by moving to a less crowded area. *See* Adams Letter at 2 (recognizing that "a person may well have a reasonable expectation of privacy in some private conversations in banks, such as those with a teller, and quiet conversations with family members or others"); *see also Kee*, 247 F.3d at 214 (listing "affirmative actions taken by the speakers to shield their privacy" as a factor to consider in determining whether a person has a reasonable expectation of privacy in a conversation); *Wisconsin State Senate v. City of Green Bay*, 719 F. Supp. 3d 869, 878-82 (E.D. Wis. 2024) (concluding that individuals had plausibly alleged a reasonable expectation of privacy in their conversations in the hallways of a city hall when they alleged that they "conducted their conversation at a low volume and away from others").

### 2. Scenarios in Which Police Officers Use Body-Worn Cameras

Police officers use body-worn cameras to record all sorts of citizen interactions, such as traffic stops, encounters with citizens at crime scenes, interviews in private residences, and the execution of search warrants and arrest warrants.[15]

---

[14] *See* Letter from Shaunee L. Harrison, Assistant Attorney General, to Sen. Justin D. Ready, at 2 (May 5, 2022) ("[T]hose who are on a person's property where a Ring Video Doorbell camera exist[s] cannot have a reasonable expectation of privacy in a conversation had outside, in the public, for anyone to hear," given "[s]ociety's overall recognition and knowledge of Ring Video Doorbell cameras" and the fact that "most if not all Ring Video Doorbell cameras are visible to the person that it is recording.").

[15] *See State v. Smith*, 265 Md. App. 91, 96-97 (2025) (involving a police officer using a body-worn camera during a traffic stop); *Sequeira v. State*, 250 Md. App. 161, 171 (2021) (involving a police officer using a body-worn camera at a crime scene); *State v. Smith*, 487 Md. 635, 646 (2024) (involving police officers using body-worn cameras while conducting an interview in a home); *Clark v. State*, 246 Md. App. 123, 128 (2020) (involving police officers using body-worn cameras while executing a search warrant), *aff'd*, 473 Md. 607 (2021); *Harrod v. State*, 261 Md. App. 499, 511 (2024) (involving a police officer using a body-worn camera while trying to execute an arrest warrant).

Many of these "encounters between uniformed police officers and citizens could hardly be characterized as 'private conversations.'" 85 *Opinions of the Attorney General* 225, 234 n.8 (2000). For example, conversations during traffic stops are unlikely to be private, because citizens are "acutely aware that [their] statements are being made to a police officer and, indeed, that they may be repeated as evidence in a courtroom." *Id.*[16] Likewise, several courts have concluded that "a suspect who engages in a conversation while seated in a police car does not have a reasonable expectation of privacy in his or her statements." *Id.* (citing *Kansas v. Timley*, 975 P.2d 264 (Kan. Ct. App. 1998); *United States v. Clark*, 22 F.3d 799 (8th Cir. 1994); *United States v. McKinnon*, 985 F.2d 525 (11th Cir. 1993); *United States v. Rodriguez*, 998 F.2d 1011 (4th Cir. 1993) (unpublished)); *see also* International Ass'n of Chiefs of Police, *Concepts & Issues Paper: Body-Worn Cameras* 5 (July 2019) ("When an individual is in custody, whether in a patrol car, interrogation room, or lockup, for example, there is generally no reasonable expectation of privacy, unless the suspect is speaking in confidence with an attorney, clergyman, or other individual with privileged communications.").

But police officers' body-worn cameras may also "record details from inside people's homes or other private areas." Marc Jonathan Blitz, American Constitution Soc'y *Police Body-Worn Cameras: Evidentiary Benefits and Privacy Threats* 1 (May 2015). It is "[l]ess clear . . . whether an individual may have a reasonable expectation of privacy in a communication with a law enforcement officer in a non-public place, such as in a suspect's or witness's home, or whether an officer's body camera may lawfully intercept a communication between two or more third parties in a public or private setting." Letter from Jeremy M. McCoy, Assistant Attorney General, to Del. Samuel I. Rosenberg, at 4 (Jan. 14, 2015).

Because the reasonableness of any expectation of privacy depends on the facts of a particular situation, *see Benford*, 649 F. Supp. at 11, it is difficult to draw bright-line rules about when an

---

[16] *Accord State v. Clayton*, 11 Wash. App. 2d 172, 179 (2019) ("Conversations with uniformed, on-duty law enforcement officers are typically not private conversations" because "[p]eople understand that information they provide to officers conducting an investigation is going to turn up in written police reports and may be reported in court along with the observations made by the officers."); *City & Borough of Juneau v. Quinto*, 684 P.2d 127, 129 (Alaska 1984) (concluding that a driver had no reasonable expectation of privacy during a traffic stop when the officer was "in full uniform" and "it should have been clear . . . that [the officer] was performing his official duties").

officer's use of a body-worn camera will intercept a private conversation that qualifies as an "oral communication" under the Wiretap Act. But we can offer some general guidance. Conversations that take place in public, where others may overhear, are less likely to be considered private and, thus, subject to the Act. *See, e.g.*, Letter from Dan Friedman, Counsel to the General Assembly, to Del. Frank M. Conaway, Jr., at 2 (Dec. 13, 2012). So, too, are conversations with officers in uniform taking statements as part of their official duties, *see* 85 *Opinions of the Attorney General* at 234 n.8—unless an officer does something to foster an expectation of privacy.[17] And while conversations at a person's home generally entail a greater expectation of privacy, *see, e.g.*, *Hawes*, 103 Md. App. at 217-20, they may not be private if the conversations are audible outside the home, *see, e.g.*, *Malpas*, 116 Md. App. at 86, or involve police officers conducting interviews as part of their official duties, *see, e.g.*, *State v. Clayton*, 11 Wash. App. 2d 172, 178-79 (2019) (asserting that "public transactions do not become private conversations merely because they take place in the home," and concluding that conversations in an apartment were not private when part of a police investigation into a report of a gun being fired); *see also* Letter from Jeremy M. McCoy, Assistant Attorney General, to Del. Samuel I. Rosenberg, at 4 (Jan. 14, 2015) (noting that the reasonableness of any expectation of privacy in a non-public place "may depend on . . . whether the officer has legal justification to be present in the location and to interact with the individual").

In sum, then, the Wiretap Act applies only if a police officer's body-worn camera captures an "oral communication." *See* CJP § 10-402(a) (prohibiting the willful interception of wire, electronic, and oral communications); *Deibler*, 365 Md. at 199-200 (noting that only oral communications are susceptible to interception by video surveillance). And oral communications encompass only those spoken in private conversation. *See, e.g.*, *Agnew*, 461 Md. at 685. Thus, the Act applies to a police officer's use of a body-worn camera only when the device captures a private conversation.

### 3. *Willfulness*

The existence of a private conversation is not the end of the analysis. Even if an encounter between a police officer and civilian involves a private conversation and, thus, an "oral communication"

---

[17] *See, e.g.*, *Davis v. State*, 121 So. 3d 462, 485-87 (Fla. 2013) (discussing cases in which police officers fostered an expectation of privacy in conversations that took place in police interrogation rooms, where individuals usually would have no expectation of privacy).

under the Wiretap Act, the statute prohibits only *willful* interceptions. *See* CJP § 10-402(a). An interception is willful if done intentionally or purposely. *Deibler*, 365 Md. at 199. The person intercepting the communication need not know that the action "is unlawful—that it is prohibited by the statute," *id.* at 188, nor must the person have a "bad motive," *Holmes v. State*, 236 Md. App. 636, 649 (2018). Rather, the person need only intend to intercept a communication protected by the Act. *See Deibler*, 365 Md. at 199 (noting that, when a man "placed [a] recording device, with an audio attachment, into . . . [a] bathroom deliberately and intentionally," the pertinent question was "whether . . . he intended to intercept an oral communication," i.e., a private conversation).

The Act thus does not apply to "interceptions arising from inadvertence or simple negligence." *Id.* For example, we have recognized that a police officer may inadvertently record an oral communication if the officer "mistakenly turns on the microphone without intending to do so, or an equipment failure activates the microphone without the officer's knowledge." 85 *Opinions of the Attorney General* at 232. An officer also would not run afoul of the Act if the officer intentionally activated a body-worn camera but did not intend, in doing so, to record a private conversation. *See Boston v. State*, 235 Md. App. 134, 146-50 (2017) (finding that a jail willfully intercepted an inmate's phone conversation with his girlfriend but did not willfully intercept a later portion of the call, when the girlfriend added a third party, as there was no evidence that the jail was aware that the third party would be added to the call). In any event, "[i]f an officer *unintentionally* makes an audio recording of an encounter with a citizen," we have said that "there is no violation of [the Act] because the officer has not *willfully* intercepted the conversation." 85 *Opinions of the Attorney General* at 235-36 (first emphasis added).

For a police officer's use of a body-worn camera to be subject to the Act, then, the camera must record a private conversation, and the officer must intend to use the camera and intend to capture that private conversation. Only if both factors are present does the Wiretap Act apply to a police officer's use of a body-worn camera.

### 4. Exceptions to the General Prohibition on Willfully Intercepting Private Conversations

Before leaving the topic of the Act's applicability to a police officer's use of a body-worn camera, we offer one further observation. Even when the Act applies—because an officer has intentionally recorded a private conversation and, thus, willfully

intercepted an "oral communication"—the officer has not necessarily *violated* the Wiretap Act. This is because the officer's actions may fall within one of the Act's eleven exceptions. We highlight two: First is the body-worn camera exception, which allows the officer to intercept an oral communication if the officer satisfies the five conditions in § 10-402(c)(11). Second is the so-called "two-party consent" provision, found in § 10-402(c)(3). *See supra* n.1 and accompanying text.

Under the consent exception, a person may lawfully intercept an oral communication "where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception." CJP § 10-402(c)(3).[18] Thus, even if an officer fails to fully comply with the body-worn camera exception because, for example, the officer is not in uniform or prominently displaying a badge or other insignia, CJP § 10-402(c)(11)(ii)(1), or the officer has failed to make reasonable efforts to conform to State standards on the use of body-worn cameras, CJP § 10-402(c)(11)(ii)(2), the officer's use of the camera might not violate the Act if the other participants to the communication have consented to the recording, CJP § 10-402(c)(3).

Consent under the Wiretap Act may be express or implied. *Petric v. State*, 66 Md. App. 470, 472 (1986); *State v. Maddox*, 69 Md. App. 296, 301 (1986). The Appellate Court has said that individuals may "tacitly consent" to a recording if they are aware of the recording device and continue to speak. *Holmes*, 236 Md. App. at 654 (contemplating a scenario in which "children are likely to be aware of" a recording of a birthday party and "fairly may be understood to tacitly consent to it"); *see also Boston*, 235 Md. App. at 146-47 (finding that an inmate at a detention center and his girlfriend implicitly consented to have their phone call recorded when a message warned them at the beginning of the call that it "was being recorded and would be monitored" and the couple "proceeded to talk"); Letter from Natalie R. Bilbrough, Assistant Attorney General, to Sen. Bill Ferguson, at 5 (Sept. 12, 2024) ("If an individual freely continues an oral communication while being recorded with their knowledge, arguably they have given implied consent.").

---

[18] Because the exception requires "consent by *all* parties," *Perry v. State*, 357 Md. 37, 61 (1999), and because a communication may involve more than two parties, the exception may require the consent of more than two people, notwithstanding the fact that courts commonly refer to this as the "two-party consent" provision, *see supra* n.1.

There is thus a possibility that, under some circumstances, a citizen will be found to have impliedly consented to a body-camera recording. At least some models of body-worn cameras emit a sound or have a light that blinks when the camera begins recording,[19] though some models marketed to law enforcement officers have a "stealth mode" which disables such indicators.[20] Whether a person is likely to know that a police officer is recording and to implicitly consent to that recording will of course depend on the facts of a particular situation. But if a person consents to the recording, implicitly or explicitly, the officer does not violate the Wiretap Act even if the officer has willfully recorded an oral communication without satisfying each of the conditions in the Act's body-worn camera exception.

### 5. Summary

Although the Wiretap Act includes an exception for police officers' use of body-worn cameras, the Act does not apply every time a police officer uses such a device. The Act applies only when a police officer purposely intercepts an "oral communication," that is, words spoken in private conversation. Furthermore, the officer *violates* the Act only if the recording does not comport with the five conditions of the body-worn camera exception, or with any other of the Act's exceptions, including the consent exception.

### B. Whether an Officer May Still Testify if a Court Suppresses a Body-Worn Camera Recording

Assuming that the Wiretap Act applies to a specific instance of a police officer using a body-worn camera, and that none of the statute's eleven exceptions permit the recording, we return to your question: If a court suppresses a recording from the body-worn camera under the Act's exclusionary provision, may the officer

---

[19] *See* Axon, *Operate Your Camera – AB4*, https://my.axon.com/s/article/Operate-your-camera-AB4?language=en_US (describing camera that "emits two short tones" when it starts recording) (last visited July 15, 2025); Axis Communications, *Axis W100 Body Worn Camera – User Manual*, https://help.axis.com/en-us/axis-w100-body-worn-camera#ThisCanBeConfiguredInAXISBodyWornMa-E0F0315E ("The camera vibrates, beeps and the front recording indicator turns on when the recording starts") (last visited July 15, 2025).

[20] *See* Transcend, *Body Cameras: DrivePro Body 70*, https://id.transcend-info.com/product/body-camera/drivepro-body-70 (describing a "[s]tealth mode" that "[d]isables the [camera's] light indicators, buzzer, and vibrator") (last visited July 15, 2025).

who made the recording still testify about what the officer observed independently of the body-worn camera footage? The exclusionary provision states, in pertinent part, that "[w]henever any . . . oral . . . communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence . . . if the disclosure of that information would be in violation of [the Wiretap Act]." CJP § 10-405(a).

We note initially that this provision contemplates the suppression of "the contents of the [oral] communication." Because a body-worn camera can record both video and audio, a court might rule that only the audio portion of a recording is inadmissible under the Act. *See J.S. v. L.S.*, No. 1375, Sept. Term, 2023, 2024 WL 4661050, at *7 (Md. App. Ct. Nov. 4, 2024) (unreported) (holding that a trial court "properly addressed the implications of the Maryland Wiretap Act" when it advised a party to "block out the sound" and "effectively admit[ted] [a] [v]ideo . . . without the audio portion"). Regardless, your question gets to a different concern—that is, if a court rules that a video recording (or at least the audio portion) is inadmissible, would an officer's trial testimony also be inadmissible as "evidence derived therefrom"?

In deciding what qualifies, for purposes of the Act's exclusionary provision, as evidence *derived from* a communication that was unlawfully intercepted, the Maryland Supreme Court has looked to the constitutional "fruit of the poisonous tree" doctrine, *Miles v. State*, 365 Md. 488, 520 (2001), which is "the usual remedy applied when police officers violate the Fourth Amendment" to the United States Constitution, *Elliott v. State*, 417 Md. 413, 435 (2010). This doctrine allows for the suppression of evidence that is "later discovered," *Segura v. United States*, 468 U.S. 796, 804 (1984), as "the product of illegal governmental activity," *United States v. Crews*, 445 U.S. 463, 471 (1980); *accord Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (identifying the test as "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (quoting John MacArthur Maguire, *Evidence of Guilt* 221 (1959))). For evidence to derive from an illegal interception, then, "there must be a 'cause-and-effect' relationship or nexus" between the interception and the evidence at issue. *Miles*, 365 Md. at 520.[21]

---

[21] The *Miles* Court also held that the attenuation doctrine applies to the Act's exclusionary provision. *See Miles*, 365 Md. at 520-21. Under

Consistent with this standard, the Appellate Court has held that a police officer may testify about a conversation that the officer had with someone the officer secretly recorded, even if the recording of that conversation is inadmissible as a violation of the Wiretap Act. In one case, for example, a police officer secretly recorded a conversation with a man he suspected of tax fraud, *Aud v. State*, 72 Md. App. 508, 518 (1987), but that crime is not among those for which the Wiretap Act authorizes a police officer to surreptitiously record a conversation, *see* CJP § 10-402(c)(2). Thus, when the State later charged the man with tax evasion, the recording was inadmissible at trial under the Act's exclusionary provision. *Aud*, 72 Md. App. at 520. Nonetheless, because the officer had heard the defendant's "braggadocio concerning income tax evasion," the Appellate Court held that the officer was "free to testify from memory as to the content of those incriminating statements." *Id.* The court concluded:

> [T]he fact that, while he was hearing [the defendant's] inculpatory utterances, the [officer] was contemporaneously illegally recording the conversation [did] not bar admission of the [officer's] testimony concerning his auditory reception of the conversation even though it [did] preclude the admission of the recording of that communication.

*Id.*

In support of its conclusion, the Appellate Court cited a number of judicial opinions from outside Maryland. *See Aud*, 72 Md. App. at 520. One of those opinions addressed an Illinois statute that, like the Wiretap Act, contemplated the suppression of unlawful recordings of conversations and "evidence derived therefrom." *People v. Gervasi*, 89 Ill. 2d 522, 527 (1982) (quoting Ill. Rev. Stat. 1977, ch. 38, par. 108A-9). The Illinois Supreme Court held that, where telephone conversations were unlawfully monitored and transcribed, police officers who participated in the conversations could still testify about what was said, even if the

---

this doctrine, fruits of the poisonous tree are "admissible when the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (quoting *Hudson v. Michigan*, 547 U.S. 586, 593 (2006)).

transcripts themselves were inadmissible. *Id.* at 531. The court reasoned that, because "[t]he officers were the participants in the conversations and were not the eavesdroppers," their "knowledge of and . . . testimony concerning the contents of the phone conversations . . . were completely independent of the illegal eavesdropping." *Id.* at 530.

Similarly, the Supreme Court of Wisconsin held that a police officer who participated in a conversation could testify about it, even if the officer had illegally recorded the conversation and the recording was inadmissible. *State v. Smith*, 72 Wis. 2d 711, 714 (1976). "[I]t can hardly be said," the court reasoned, "that the testimony of the [officer] was a fruit of the illegal [recording] device," because "his testimony [was] independent of its use and would [have] be[en] the same even if the device were not present or had mechanically failed." *Id.*

Although *Aud* (and the opinions it cited) did not involve body-worn cameras, the same reasoning should apply to the testimony of an officer who used such a device in violation of the Wiretap Act. Because the Act's exclusionary provision operates like the fruit of the poisonous tree doctrine, *see Miles*, 365 Md. at 520, it excludes only "evidence obtained *from* or *as a consequence of* lawless official acts, not evidence obtained from an independent source." *Costello v. United States*, 365 U.S. 265, 280 (1961) (emphasis added) (discussing the fruit of the poisonous tree doctrine). If an officer hears a conversation because the officer is a participant or witnesses the conversation in person, the officer gains personal knowledge of that conversation through a source independent of the camera or the recording it produces: the officer's own senses. Thus, even if the Wiretap Act's exclusionary provision calls for the suppression of a body-worn camera's footage (or at least the audio portion of that footage), the provision does not prohibit the officer from testifying about what the officer observed independently, with the officer's own senses.[22]

---

[22] We assume for purposes of our analysis that the officer would be testifying solely based on what the officer independently observed and would not be using the audio recording to refresh the officer's recollection about what was said. We thus offer no opinion as to whether the officer could use the suppressed recording (or a police report that was written using the recording) to refresh the officer's recollection before testifying. Although an attorney generally has a "large amount of freedom . . . when choosing an object with which a witness's recollection can be refreshed," *Germain v. State*, 363 Md. 511, 533 (2001), the Wiretap Act makes it "unlawful for any person to . . . [w]illfully use . . .

# III
# Conclusion

The Wiretap Act applies to a police officer's use of a body-worn camera only when the officer purposely uses the device with the intent to record a private conversation. Moreover, such use violates the Act only when the officer fails to satisfy each of five conditions in the Act's body-worn camera exception and the recording does not fall within any other exceptions in the wiretap statute. If a court suppresses a recording as a violation of the Act, the statute's exclusionary provision does not prohibit the officer from testifying about what the officer observed independently of the body-worn camera, using the officer's own senses.

Anthony G. Brown
Attorney General of Maryland

Rachel A. Simmonsen
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice

---

the contents of any . . . oral . . . communication, knowing or having reason to know that the information was obtained through the interception of a[n] . . . oral . . . communication in violation of" the Act, CJP § 10-402(a)(3). Maryland's appellate courts have not addressed whether this statutory language precludes the use of an illegally intercepted communication to refresh an officer's testimony. We note, however, that using the video *only* (with no audio) to refresh an officer's recollection would almost certainly not involve the use of an *oral* communication intercepted in violation of the Act. Ultimately, when a court suppresses a body-worn camera recording, the admissibility of other evidence—for example, the officer's testimony or a police report that the officer wrote after reviewing the camera footage—will depend on whether that other evidence "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable"—for example, observations using the officer's own senses—"to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488.